UNITED STATES of America, By John MITCHELL, Attorney General, Plaintiff,

Danita Hampton, By Her Mother and Next Friend, Yvonne Hampton, Plaintiff-Intervenors,

v.

CHOCTAW COUNTY BOARD OF EDU-CATION et al., Defendants.

Civ. A. No. 4246-66.

United States District Court,
S. D. Alabama, S. D.

Aug. 8, 1969.

Supplemental Order Aug. 11, 1969.

Frank D. Allen and Joseph D. Rich, Dept. of Justice, Washington, D. C., Chas. S. White-Spunner, Jr., U. S. Atty., Mobile Ala., for plaintiff.

Frankie L. Fields, Mobile, Ala., Franklin E. White and Jack Greenberg, New York City, Solomon S. Seay, Jr., Montgomery, Ala., for plaintiff-intervenors.

J. Edward Thornton, Mobile, Ala., John Christopher, Butler, Ala., for defendants.

## ORDER

PITTMAN, District Judge.

On the 5th and 7th of August, 1969, the parties together with their attorneys of record appeared in Court, evidence was taken and arguments made on objections and suggestions to the plan for desegregation of the Choctaw County schools in pursuance of a mandate from the 5th C.A. of June 26, 1969, 417 F.2d 838, and case taken under advisement.

Upon due consideration of the facts and law, the Court finds as follows:

## FINDINGS OF FACT

The 5th C.A. decree dated June 26, 1969, was received by this Court on June 30, 1969, and an order was entered in pursuance of that mandate.

On the same date, June 30, Dr. Gregory A. Anrig's Office, Office of Education, United States Department of Health, Education and Welfare (hereinafter referred to as HEW) Washington, D. C., was informed by telephone of the 5th C.A. mandate and the role of HEW. On the same date a letter to Dr. Anrig, included and made a part of this decree as Appendix B, and a letter to Mr. J. J. Jordan, Senior Program Specialist, HEW, Atlanta, Georgia, included and made a part of this decree as Appendix C, was informed of HEW's role.

On July 2, a schedule of weekly conferences was set up between HEW and Choctaw County Board of Education and the Superintendent of Education. A copy of that letter is included and made a part of this decree as Appendix D.

On July 10, the defendants filed a letter with this Court. The letter was treated as a motion and its thrust was to waive the defendant Board's right to present a plan. It requested HEW to present a plan as soon as possible. At the first scheduled conference on July 11, a modified time schedule of compliance with the 5th Circuit mandate was entered. That order is included and made a part of this decree as Appendix E–1.

Beginning at the first conference the Court urged HEW and Choctaw County defendants to establish communication so an intelligent plan could be presented to the Court. The weekly conferences were held in the Court's chambers. At the Court's suggestion, a skeleton plan was submitted by HEW on July 17, which was identical with the plan filed July 24, except for instructions for its implementation, and details on school housing, population, etc.

From statements made in chambers during these conferences, it was obvious there was very little communication between HEW and the Choctaw County defendants. It would serve no useful purpose to assess the blame, suffice it to say, communication was practically non-existent except at the conferences. HEW had been working and met the Court's deadlines. The Choctaw County Board defendants had been working but the detailed information concerning the school system was largely in their possession and not in HEW's.

As a result of the July 24 conference, communication was finally established between HEW and the Choctaw County defendants and on July 30 HEW was granted leave to amend the plan submitted July 24. The final plan was submitted August 1, 1969.

In open Court it was agreed that the August 1, 1969 plan was submitted after full consultation by HEW with the Choctaw County Board and Superintendent, and was formed from full familiarity of all facts presented by the Board and Superintendent.

All attorneys were notified by telephone and copies were delivered or made available to all attorneys the same day.

On August 4, objections and suggestions to the HEW plan were filed by the Choctaw County defendants.

On August 5, 1969, with parties and attorneys present in open court, the Court asked if there were any objections to the HEW plans by the plaintiff U. S., or the plaintiff-intervenors Hampton, et al., to which each stated there were none.

The only evidence offered in support of the Choctaw County defendants' objections and suggestions to the HEW plans was addressed to the problem of not allowing high school seniors to graduate in the 1969–70 school year from the schools attended by them in the northern zone in past years (see objections, page 10).

The Court finds from the evidence that there would be a total of 55 seniors, 17 white and 38 Negro, who could possibly be affected. They are located in the following schools:

Choctaw County (formerly all white) 0 white, 17 Negro
Lisman (formerly all Negro) 10 white, 0 Negro
East Choctaw (formerly all Negro) 7 white, 21 Negro.

---

The Court further finds that the number of students involved is minimal and would in no way materially affect, dilute, or defeat HEW's plan as submitted from disestablishing the dual school system and the establishment of an unitary one.

It is this Court's opinion that it is a poor judge with crass feelings and lacking in sensitivity who would ignore a teenager's emotional attachment to a school in circumstances such as this and where more than 50% of them will receive their highest educational diploma or certificate. If exceptions of this nature can not be tolerated, it appears to me that probably computers could better serve as judges.

The only plan before the Court for its consideration is HEW's amended plan filed August 1, 1969.

There is no other evidence before the Court to support any other of the defendants' objections.

## CONCLUSIONS OF LAW

Under the mandate of the 5th C.A. in this case dated June 26, 1969, wherein this Court was directed to request the Office of Education (HEW) to collaborate with the School Board in preparation of a plan and if there was no agreed plan submitted, HEW was to submit a plan in accordance with the authorities set out in the 5th C.A. mandate, and the School Board having waived the

filing of a plan, the plan filed August 1, 1969, by HEW is adopted with the following modification.

The plan is amended in accordance with the objections and suggestions of the defendants as follows:

## OPTION OF SENIORS OF THE 1969–70 GRADUATING CLASS IN THE NORTH AREA AS DESIGNATED IN THE HEW PLAN.

 Any high school student who will be a senior during the 1969–70 school term in the north area and who for the school year 1968–69 attended a state accredited high school in Choctaw County different from the one to which he is assigned for the 1969–70 school term, shall have the right to graduate, hold his class ring and receive his diploma from either the high school he attended in his junior year (11th grade) or the one he attended in his senior year provided, such student successfully completes all requirements for graduation at the school he elects to graduate from; provided however, that no student otherwise assigned to the same school will be displaced, and, provided further, that such student exercising this option must provide his own transportation if the regular transportation routes and services will not meet his transportation requirements. It is incumbent upon the defendants to provide space for all students in their respective schools to meet this modification and in the event that can not be accomplished the modification will not apply to such students wherever the failure occurs.

It is therefore ordered, adjudged and decreed that the school plan herein referred to filed by HEW August 1, 1969, be incorporated and made a part of this decree in the appendix marked Appendix F, together with the modifications set out above.

The costs of this proceeding are herein taxed against the defendants save and except as hereinafter set out.

Under IV, page 844 of the 5th C.A. mandate dated June 26, 1969, this Court was ordered to make Findings of Fact and Conclusions of Law as to the liability of the Government for the costs of certain depositions. A separate decree is being prepared and will be filed on the taxation of those costs.

## SUPPLEMENTAL ORDER

In compliance with the Fifth Circuit Court of Appeals order in this cause dated June 26, 1969 to this Court reversing and remanding for further proceedings this Court's taxation of certain costs against the Plaintiff U. S., with their suggestion that this Court make findings of fact and conclusions of law as to the liability of the Government for these costs, further evidence was taken, arguments heard and the matter re-submitted to the Court.

Upon due consideration of the evidence and the law, the Court finds as follows:

## FINDINGS OF FACT

The posture of this case is important.

### I.

On August 30, 1966 the Plaintiff U. S. filed a complaint against the Defendants to end desegregation in the Choctaw County schools. An order granting the relief prayed for was entered September 3, 1966 which was later affirmed. Additional hearings in connection with the original complaint and orders were issued in May and September, 1967.

### II.

On May 14, 1968 a motion for leave to intervene was filed by Plaintiff-Intervenors Hampton, et al., seeking supplemental relief and seeking to hold the Defendants in civil contempt. The gravamen of the charge was that the defendants had ignored a first distribution of choice forms and the results thereof and had furnished a second group of choice forms, all of which was designed to intimidate, threaten and oppress Negro students in their right to freely choose a school. This motion was

heard May 31, 1968. Leave to intervene was granted June 21, 1968.

## III.

On June 28, 1968 the Plaintiff U. S. filed a motion seeking to have the freedom of choice plan discontinued and to replace it with an assignment of students to schools on the basis of geographic attendance zones or pairing and alleged

"* * * (T)he operation of their (Defendants) freedom of choice plan demonstrate(s) that the plan fails to provide a real prospect for dismantling the state-imposed dual system of schools * * *."

At this point the Defendants were in the position of being charged with having attempted to thwart this Court's freedom of choice plan. During the hearings on these motions and petitions pending the hearings on the merits, the Defendants made known to the Court and other parties in open Court that two large boxes had been received by them, one containing approximately 850 choice forms of Negroes to attend white schools, and the second one containing approximately 100 choice forms of Negroes to attend Negro schools. The return address on the boxes was Auburn, Alabama (the wrappers with the return address is in evidence in this cause) which is located on the east edge of the state as opposed to Choctaw County on the west edge. By examination of the forms and comparison of them, one with another, there "appeared" indications that many of the choice forms may have been signed by other than authorized persons. It further "appeared" many were signed in the same handwriting. For these reasons the second choice forms had been distributed. The Defendants were not only charged with the failure to implement the Court's freedom of choice plan, but the Plaintiff-Intervenors sought to hold them in contempt of court which could have subjected them to heavy penalties and raised the question of Defendants' good faith in their implementation of the plan.

It was the Defendants' position that the second choice forms were distributed to clear up the possible fraudulent submission of the first choice forms, and it was the purpose of certain Negroes to thwart the choice plan.

## IV.

Whereupon on July 10, 1968 the Defendants filed a motion to take the deposition of the Plaintiff-Intervenors and other witnesses and served notice, to-wit:

"* * * (W)e shall * * * take pretrial depositions of the Intervenors and others to establish what we understand to be the facts, namely, that Intervenors and others from in and outside Choctaw County,

1. Scattered 'hate' sheets throughout Choctaw County.

2. Sought to sabotage the freedom of choice plan.

3. Coerced and intimidated Negro parents in exercising their choices.

4. Offered to sell choices by Negro parents in exchange for Petitioners firing personnel in the school system against whom no charges have been preferred, but who are rumored to be described as 'Uncle Toms'."

The depositions were set July 10, 1968 at Butler, Alabama, county seat of Choctaw and approximately 120 miles from Mobile, Alabama.

## V.

On the afternoon of July 15, 1968 the Plaintiff-Intervenors filed in court and gave oral notice to the Defendants of a motion for a protective order to prevent the taking of the depositions on the ground that it sought information irrelevant to this case in the light of Green v. County School Board of New Kent County, Virginia, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, de-

cision and their striking of the alleged violations of the freedom of choice against the Defendants. The Court was on vacation, out of the city and state, nothing appears to show the motion was presented to any other judge, and the deposition proceeded according to the Defendants' notice on July 16, 1968 at Butler, Alabama (at a later hearing the Court denied the protective order and ordered the deponents to answer the questions objected to).

## VI.

The depositions have been introduced into evidence. The U. S. Attorney did not interrogate any witnesses but the depositions clearly show he was present and participated in the hearing. On arguments concerning the question of taxation of costs he acknowledged this.

The U. S. takes the position that it was not a party to the hearing, i. e., it was neutral. It appeared to the Court that he vacillated as to whether he supported the Plaintiff-Intervenors' position. He supported their position in the *memorandum brief* and first arguments but upon questioning by the Court as to why the U. S. should object to the development of all facts on discovery he took a *neutral position of blandly washing his hands of any responsibility at the hearing* and of remaining aloof for the Plaintiff-Intervenors and Defendants to wage battle.

## VII.

The Plaintiff's and Plaintiff-Intervenors' interests were compatible in seeking to desegregate the dual school system and there is no question that the respective attorneys had joined hands and were aiding each other.

## VIII.

█ In this case at previous hearings far-reaching and searching questions were consistently allowed in an effort to lay bare the truth concerning the school system. It is common knowledge that the widest latitude conceivable

in discovery has been extended to the U. S., Department of Justice, Civil Rights and related agencies, and parties with compatible interests, seeking to eradicate the evils of school segregation and racial discrimination.

## IX.

The posture of the case, the behavior of counsel in the presence of the Court, and all of the subtleties arising therefrom have all the earmarks of a hand in glove adversary effort, active and tacit, between Plaintiff and the Plaintiff-Intervenors against the Defendants.

## X.

It is the Court's conclusion of fact that with all the supportive help the Government had and was giving the Plaintiff-Intervenors and others in the same or similar causes of action that if the Government's attorney at the deposition hearing had sought the same extensive discovery (which they should have sought to lay bare the truth, wherever the truth could be found) or had suggested to the Plaintiff-Intervenors' attorneys and witnesses that the answers should have been given, noting objections in the depositions and further suggesting that when the depositions were later offered into evidence objections or motions to exclude non-admissible evidence could be made, answers would have been forthcoming and the expense and inconvenience of the second deposition hearing would have been avoided.

The Plaintiff U. S. therefore, in truth and in fact, was responsible for the second deposition hearing. The U. S. was the moving party initially and continuously in this cause. Its concern for the truth or falsity of the matters of inquiry should have been one of utmost importance to the representative of all the people.

## CONCLUSIONS OF LAW

█ *Green v. County School Board of Kent County, Virginia, supra,* 391

U.S. 430, 88 S.Ct. 1689, pp. 724, 725 did not absolutely abolish freedom of choice, therefore, inquiry as to why a freedom of choice plan was or was not working was a proper inquiry and proper questions which would have led to discovery of these facts was proper.

4 Moore F.P., R. 26 Sec. 26.16(1), p. 1175 " * * * 'the only restriction placed upon the matters which may be gone into upon discovery examination is that the matter be relevant.' The language of Rule 26(b) in this respect is: ' * * * the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.' * * * "

4 Moore F.P., R. 26 § 26.17 pp. 1226, 1227:

"examination before trial * * * for discovery of evidence, indeed, for leads as to where evidence may be located" and "Rule 26(b) 'it is not ground for objection that the testimony will be inadmissible at the trial if * * * reasonably calculated to lead to the discovery * * * 'Courts have appropriately given a broad scope to the amendment * * *' * * * "

F.R.C.P. 54(d) language as to costs provides that ordinarily the prevailing party shall be allowed the costs "unless the court otherwise directs" gives the court discretionary power in the taxation of costs. 3 Barron and Holtzoff, Federal Practice and Procedure, § 1195, pp. 43, 44.

## OPINION

In consideration of the posture of the case, the facts and law hereinabove set out, it is the opinion of this court that while the depositions were taken of Plaintiff-Intervenors and other witnesses, by the Defendants, the United States' position was inextricably interwoven.

■ Furthermore, even though a "legal" adversary, the Government represents all the people, white and black, with vast resources at its command, tremendous prestige and influence, particularly in cases such as this one with groups similar to the Plaintiff-Intervenors having and continuing to continually seek the Government's help in suits of this nature, the Government should not have remained aloof, taken a neutral position, nor attempted to "wash its hands" of any responsibility at the deposition hearing, but contrawise was under a duty to vigorously seek the truth as to the real reason freedom of choice was not properly working regardless of which party litigant the truth hurt or helped.

■ The simple fact that many acts of discrimination have existed in a general area does not ipso facto make true *every charge leveled,* as here by the Plaintiff-Intervenors against these Defendants, nor render automatic a judgment against them.

The accusing finger is easy to level and point. Lest the mantle of self righteousness is assumed and becomes a haven of false and arrogant pride leading into error, the search for truth must be impartial.

In this case, the effort of the U. S. attorney to eradicate the evils of discrimination should not have blinded him to this impartial search for truth at the deposition hearing. Some of history's most glorious mistakes and most tyrannous acts were done in the name of (misconceived) righteousness.

■ The U. S. has a higher duty than an ordinary adversary. It is the representative of all the people, by the will of the people surviving on and expending the people's tax money and should be charged with a high standard of conduct in litigation, i. e., find the truth regardless of the consequences to the position of the U. S. as a party adversary.

I do not tax the costs against the Plaintiff-Intervenors. They are true adversaries in the classic sense. With the active and tacit support of the Plaintiff U. S. they had every reason to be

reassured their position was right. It is my judgment one word or gentle prodding from the U. S. and the questions more than likely would have been answered at the first hearing.

It is therefore Ordered, Adjudged and Decreed that the Plaintiff U. S. be and hereby is taxed with the costs of the depositions in the amount of $816.24.

APPENDIX B

JUDGE'S CHAMBERS

UNITED STATES DISTRICT COURT
SOUTHERN AND MIDDLE DISTRICTS OF ALABAMA
P. O. BOX 465
MOBILE, ALABAMA 36601

June 30, 1969

VIRGIL PITTMAN
JUDGE

Dr. Gregory A. Anrig
Office of Education
United States Department of
 Health, Education and Welfare
Washington, D. C. 20202

Re: U.S.A., etc., Danita
 Hampton, etc. v. Choctaw
 County Board of Education,
 et al.
 Civil Action No. 4246-66

Dear Dr. Anrig:

I talked with Mr. Frank McGettrick of your office today in your absence. He was informed of the substance of this letter and of the attached decrees.

Enclosed and attached is a copy of the Fifth Circuit Court of Appeals decree in the above captioned matter, and an order I have issued this date in compliance with the decree, and particularly as set out on page 7 (6) -

"The district court shall forthwith request the Office of Education of the United States Department of Health, Education and Welfare to collaborate with the School Board of Choctaw County in the preparation of a plan to desegregate fully and affirmatively all public schools in the county, with comprehensive recommendations for locating and designating new schools and consolidating existing schools to assist

(A1473)

Dr. Gregory A. Anrig
June 30, 1969
-2-

in eradicating past discrimina-
tion and effecting desegregation."
(See Footnote 23, last page of
the Fifth Circuit opinion hereto
attached.)

In compliance with the Fifth Circuit
Order, your office is by this letter, and was
on this date by telephone, requested to render
this assistance.

The time schedule as set out requires,
that a plan be offered within 30 days from
June 26, 1969. Your attention is directed to
paragraph 7 of the Fifth Circuit order which is
incorporated in this court's order of this date
to the Choctaw County School Board.

The Fifth Circuit has ordered that
this matter be given the highest priority. (See
page 6, Fifth Circuit Court of Appeals order.)
This court stands ready at all times during the
designated period to lend its assistance so as
to fully comply with the Fifth Circuit decree.

Sincerely yours,

Virgil Pittman

CC: All attorneys of record and defendants.

Mr. J. J. Jordan
Senior Program Specialist
Equal Educational Opportunity
Office of Education
50 - 7th Street, N.E.
Atlanta, Georgia 30323

[A1474]

APPENDIX C

JUDGE'S CHAMBERS

UNITED STATES DISTRICT COURT
SOUTHERN AND MIDDLE DISTRICTS OF ALABAMA
P. O. BOX 465
MOBILE, ALABAMA 36601

VIRGIL PITTMAN
JUDGE

June 30, 1969

Mr. J. J. Jordan
Senior Program Specialist
Equal Educational Opportunity
Office of Education
50 - 7th Street, N. E.
Atlanta, Georgia 30323

 Re: U.S.A., etc., Danita Hampton,
 etc., v. Choctaw County Board
 of Education, et al.,
 <u>Civil Action No. 4246-66</u>

Dear Mr. Jordan:

 Today I talked with Mr. Frank McGettrick
in the absence of Dr. Anrig in the Office of Educa-
tion, Washington, D. C., concerning the enclosures.

 He informed me this matter would be re-
ferred to you, therefore I am sending you copies of
my correspondence to him to help expedite this
matter.

 Please note the time limitation of 30
days from June 26, 1969.

 My office stands ready to consult with
you and any of the parties during this time.

 Yours very truly,

 Virgil Pittman

CC: All attorneys of record and defendants.

 Dr. Gregory A. Anrig
 Office of Education
 Washington, D. C. 20202

[A1475]

APPENDIX D

JUDGE'S CHAMBERS

UNITED STATES DISTRICT COURT
SOUTHERN AND MIDDLE DISTRICTS OF ALABAMA
P. O. BOX 465
MOBILE, ALABAMA 36601

VIRGIL PITTMAN
JUDGE

July 2, 1969

Re: U.S.A., Etc., Et Al.
V. Choctaw County Board
of Education, Et Al.,
Civil Action No. 4246-66

Gentlemen:

In connection with the mandate of the
Fifth Circuit Court of Appeals, and my order is-
sued on June 30, 1969, it is my desire that there
be a conference in my chambers on:

July 11, 1969 - at 10:00 a.m.
July 18, 1969 - at 2:30 p.m.
July 25, 1969 - at 10:00 a.m.,

for progress or status reports. Inasmuch as the
thirtieth day falls on a Saturday, July 26, 1969,
I expect the thirtieth day report to be ready
July 25, 1969.

Sincerely yours,

Virgil Pittman

Distribution to: All Attorneys of plaintiffs & defs.
Members Choctaw Co. Bd. of Ed.
Supt. of Ed., Choctaw Co.
Dr. Gregory A. Anrig, Washington
Mr. J. J. Jordan, Atlanta, Ga.

Copy of above letter mailed on July 15, 1969 to Frankie Fields,
who said she did not receive one in the first distribution.
m p cox

APPENDIX E

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA, BY )
JOHN MITCHELL, Attorney General, )
 )
 Plaintiff, )
 )
DANITA HAMPTON, By Her Mother )
and Next Friend, YVONNE HAMPTON, )
 )
 Plaintiff-Intervenors, ) CIVIL ACTION
 )
V. ) No. 4246-66
 )
CHOCTAW COUNTY BOARD OF )
EDUCATION, et al., )
 )
 Defendants )
 )

ORDER MODIFYING TIME SCHEDULE RE
MANDATE OF FIFTH CIRCUIT COURT OF
APPEALS.

In compliance with the mandate of the
Fifth Circuit Court of Appeals dated June 26, 1969,
this court issued an order dated June 30, 1969.

On July 2, 1969, the court addressed a
letter to the parties setting out a schedule of
weekly conferences for progress or status reports,
the first being set July 11, 1969.

On July 10, 1969, the defendants hand
delivered a letter to the court, of which copies
have now been given to plaintiffs and Health,
Education and Welfare representatives.

In court at the scheduled conference
July 11, 1969, it was agreed by the defendants that
the letter would be made part of this record and
could be treated as a motion concerning the time
schedule.

(A1477)

Among other things, the defendants state:

"We do not see how we can
conscientiously present such
a plan to this court * * *
(and) * * * the plan should not
wait until mid or late August
* * * we respectfully request
this Court to instruct the
Office of Education to promul-
gate its plan now * * * so that
we may proceed at once to pre-
pare to open school at the
scheduled time. * * *"

The Office of Health, Education and Welfare informs the court it believes it can present a skeleton plan at the next conference, July 17, 1969, and can present a final plan not later than July 24, 1969.

The time schedule heretofore set out in this court's order dated June 30, 1969, page 3, (7) is hereby AMENDED to reflect the following:

(a) The Board has waived its right to present a plan within 30 days from June 26, 1969, and requests that the Health, Education and Welfare present a plan as soon as possible.

(c) Health, Education and Welfare is to submit a skeleton plan on, to wit, the 17th day of July, 1969, and a final plan not later than July 24, 1969.

The other portions of (7) remain in full force and effect.

Done, this the 11th day of July, 1969.

_____
UNITED STATES DISTRICT JUDGE

U. S. DISTRICT COURT
SOUTHERN DISTRICT ALABAMA
FILED AND ENTERED THIS THE
11th DAY OF JULY 1969
MINUTE ENTRY NO. 25741
WILLIAM J. O'CONNOR, CLERK,
BY -
[A1478] Deputy Clerk

APPENDIX F

## A DESEGREGATION PLAN
## FOR
## CHOCTAW COUNTY SCHOOL SYSTEM

A REPORT TO THE
SUPERINTENDENT

BY THE
DIVISION OF EQUAL EDUCATIONAL OPPORTUNITIES
UNITED STATES OFFICE OF EDUCATION
ATLANTA, GEORGIA 30323

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Enrollment and Building Information | 1 |
| II. | Recommended Plan for Student Desegregation | 2 |
| III. | Faculty Desegregation | 6 |
| IV. | Transportation | 7 |
| V. | School Construction and Site Selection | 7 |
| VI. | Majority to Minority Transfer Policy | 7 |
| VII. | Attendance Outside System of Residence | 8 |
| VIII. | Suggestions for Plan Implementation | 9 |
| IX. | Resources for Assistance | 13 |
| X. | Building Information Forms | 14 |

[A1481]

COMPOSITE BUILDING INFORMATION FORM

Choctaw County

ιΕ: 1968-69

| Name of School | Grades | Capacity Perm. | W. Ports. | Students W | N | T | Staff W | N | T | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Lisman | 1-12 | 1000 | | 0 | 1001 | 1001 | 3 | 40 | 43 | |
| East Choctaw | 1-12 | 950 | | 0 | 840 | 840 | 0 | 36 | 36 | |
| Shady Grove | 1-12 | 600 | | 0 | 582 | 582 | 3 | 23 | 26 | |
| Choctaw County | 7-12 | 625 | | 643 | 29 | 672 | 31 | 1 | 32 | |
| Southern Choctaw | 7-12 | 400 | | 399 | 0 | 399 | 18 | 2 | 20 | |
| Butler | 1-9 | 900 | | 766 | 74 | 840 | 28 | 2 | 30 | 4 Portables |
| Silas | 1-9 | 210 | | 163 | 2 | 165 | 6 | 1 | 7 | 1 special ED |
| Silbertown | 1-7 | 450 | | 308 | 1 | 309 | 11 | 1 | 12 | class |
| | | | Totals | 2269 | 2529 | 4795 | | | | |

IA14821

CHOCTAW COUNTY SCHOOL DISTRICT

II.

RECOMMENDED PLAN FOR STUDENT DESEGREGATION

Recommendations, 1969-70

In order to bring about a unitary school system in which schools are not identifiable by race, the following recommendations to be effective for the 1969-70 school year are submitted:

Student assignment recommendations are based on zoning to accomplish the student enrollment as shown on the 1969-70 composite building forms. The student break-down in each zone was supplied by the school system.

The County is divided into two major zones. A north zone and south zone. There are four (4) schools located in each major zone. The schools in each major zone is further zoned to give student enrollment as shown on composite building forms.

North Zone:

1. Choctaw County High school will house grades 7-12.

2. Lisman High School will house grades 1-12.

3. East Choctaw High School will house grades 1-12.

4. Butler Elementary will house grades 1-6.

South Zone:

1. South Choctaw High School will house grades 9-12.

2. Shady Grove will house grades 1-8.

3. Gilbertown will house grades 1-8.

4. Silas will house grades 1-6.

[A1483]

COMPOSITE BUILDING INFORMATION FORM

Choctaw County

Unit: Projected 1969-70

| Name of School | Grades | Capacity Perm. | Capacity W. Ports. | Students W | Students N | Students T | Staff W | Staff N | Staff T | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Choctaw County | 7-12 | 675 | | 382 | 270 | 652 | | | | |
| Lisman | 1-12 | 1000 | | 317 | 766 | 1083 | | | | Relocate 4 Portables |
| East Choctaw | 1-12 | 950 | | 257 | 708 | 965 | | | | |
| Butler | 1-6 | 900 | | 443 | 284 | 727 | | | | |
| South Choctaw | 9-12 | 400 | | 277 | 168 | 445 | | | | |
| Shady Grove | 1-8 | 600 | | 216 | 215 | 431 | | | | |
| Gilbertown | 1-8 | 450 | | 263 | 126 | 389 | | | | |
| Silas | 1-6 | 210 | | 120 | 90 | 210 | | | | |
| Totals | | | | 2275 | 2687 | 4962 | | | | |

The higher student enrollment given for 1969-70 over the 1968-69 figure represents a more recent accounting.

[A14843]

The dual school system will be eliminated in 1969-70. The County plans to reorganize the North Zone in 1970-71 to have one (1) high school and three zoned elementary schools. The student assignment for the reorganization is shown on the 1970-71 composite building forms.

COMPOSITE BUILDING INFORMATION FORM

Date: 1970 Reorganization of Choctaw County North Zone

| Name of School | Grades | Capacity Perm. | Capacity Ports. | Students W | Students N | Students T | Staff W | Staff N | Staff T | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Choctaw County | 9-12 | 675 | | 404 | 538 | 942 | | | | App Capacity |
| Lisman | 1-8 | 1000 | | 258 | 532 | 790 | | | | |
| East Choctaw | 1-8 | 950 | | 228 | 490 | 718 | | | | |
| Butler | 1-8 | 900 | | 589 | 456 | 1039 | | | | App Capacity |

## III.

### DESEGREGATION OF FACULTY AND OTHER STAFF

The School Board shall announce and implement the following policies:

1. The principals, teachers, teacher-aides and other staff who work directly with children at a school shall be so assigned for the school year 1969-70 and subsequent years that in no case will the racial composition of a staff indicate that a school is intended for Negro students or white students. For the 1969-70 school year the district shall assign the staff described above so that the ratio of Negro to white teachers in each school, and the ratio of other staff in each, are substantially the same as each such ratio is to the teachers and other staff, respectively, in the entire school system.

The school district shall, to the extent necessary to carry out this desegregation plan, direct members of its staff as a condition of continued employment to accept new assignments.

2. Staff members who work directly with children, and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin, except to the extent necessary to correct discrimination.

3. If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

Prior to such a reduction, the school board will develop or require the development of non-racial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the school district. The school district also shall record and preserve the evaluation of staff members under the criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee.

"Demotion" as used above includes any reassignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously, or (3) under which the staff member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably current period. In general and depending upon the subject matter involved, five years is such a reasonable period.

## IV.

### TRANSPORTATION

The transportation system shall be completely re-examined regularly by the superintendent, his staff, and the school board. Bus routes and the assignment of students to buses will be designed to insure the transportation of all eligible pupils on a non-segregated and otherwise non-discriminatory basis.

## V.

### SCHOOL CONSTRUCTION AND SITE SELECTION

The size and location of new school buildings and additions to existing buildings can significantly affect desegregation now and in the future.

All school construction, school consolidation, and site selection (including the location of any temporary classrooms) in this system shall be done in a manner which will prevent the recurrance of the dual school structure once this desegregation plan is implemented.
[A14873]

## VI.

### MAJORITY TO MINORITY TRANSFER POLICY

Whenever there shall exist schools containing a majority of Negro students, this school district shall permit a student (Negro or white) attending a school in which his race is in the majority to choose to attend another school where space is available, and where his race is in a minority.

## VII.

### ATTENDANCE OUTSIDE SYSTEM OF RESIDENCE

If the School District grants transfers to students living in the district for their attendance at public schools outside the district, or if it permits transfers into the district of students who live outside the district, it shall do so on a non-discriminatory basis, except that it shall not consent to transfers where the cumulative effect will reduce desegregation in either district or reinforce the dual school system.

## VIII.

### SUGGESTIONS FOR PLAN IMPLEMENTATION

Successful implementation of desegregation plans largely depends upon local leadership and good faith in complying with mandates of the Courts and the laws upon which the Courts act. The following suggestions are offered to assist local officials in planning for implementation of desegregation orders.

#### Community

1. The Superintendent and Board of Education should frankly and fully inform all citizens of the community about the legal requirements for school desegregation and their plans for complying with these legal requirements.

2. The Board of Education should issue a public statement clearly setting forth its intention to abide by the law and comply with orders of the Court in an effective and educationally responsible manner.

3. School officials should seek and encourage support and understanding of the press and community organizations representing both races.

4. The Board of Education, or some other appropriate governmental unit, should establish a bi-racial advisory committee to advise the Board of Education and its staff throughout the implementation of the desegregation plan. Such committee should seek to open up community understanding and communication, to assist the Board in interpreting legal and educational requirements to the public.

5. The Superintendent should actively seek greater involvement of parents of both races through school meetings, newsletters, an active and bi-racial P.T.A., class meetings, parent conferences, and through home visits by school personnel.

6. The Superintendent and Board of Education should regularly report to the community on progress in implementing the desegregation plan.

#### School Personnel

1. The Superintendent should provide all personnel copies of the desegregation plan and arrange for meetings where the personnel will have an opportunity to hear it explained.

2. The Board of Education should issue a policy statement setting forth in clear terms the procedures it will follow in reassignment of the personnel (see section on Desegregation of Staff).

[A14261]

3. Assignments of staff for the school year should be made as quickly as possible with appropriate followings by school principals to assure both welcome and support for personnel new to each school. Invitations to visit school before the new school year begins should be offered.

4. The Superintendent should see that a special orientation program is planned and carried out for both the professional and non-professional staffs (including bus drivers, cafeteria workers, secretaries and custodians) preparatory to the new school year. He should make every effort to familiarize new and reassigned staff with facilities, services and building policies, and prepare them to carry out their importatnt role in a constructive manner. The Superintendent should direct each principal to see that each teacher new to a school is assigned for help and guidance to a teacher previously assigned to that school. Each such pair of teachers should have an opportunity to meet before the school year actually begins.

5. The Superintendent should arrange an in-service training program during the school year to assist personnel in resolving difficulties and improving instruction throughout the implementation period. Help in doing this is available from the Center for Intercultural Education at the University of South Alabama.

6. It is important that, through personal observations, students see that nonprofessional service positions in their schools are not for members of one race and that harmonious working relationships can exist between members of both races. The Superintendent and Board of Education should therefore take all necessary steps to assure that all staffs are bi-racial.

## Instructional Program

1. Each principal should be required to appoint biracial faculty committees to study and, as necessary, revise each area of the curriculum to assure better learning opportunities for all students. This should become a continuous activity in each school and throughout the district.

2. Student evaluation policies and procedures should be reviewed continuously for areas in need of improvement and adjustment to encourage the educational growth and motivation of students.

3. Remedial programs in reading and mathematics skills, as appropriate, should be introduced and/or expanded for all students in need of special help. Such a program should supplement regular course offerings and assignments of students.

4. Grouping procedures should be reviewed and revised as necessary to assure they support the spirit as well as letter of desegregation plan the district has accepted responsibility for implementing in good faith.

5. Participation in extracurricular activities by students of both races should be actively encouraged by administrators and teachers as a means for developing school spirit and a feeling of belonging.

6. School organizations - student government, cheerleaders, musical organizations, athletic teams must be operated on a nondiscriminitory basis and should include students of both races.

7. Guidance counselors should be oriented and urged to plan a leading role in successful implementation of the desegregation plan.

8. The curriculum should be reviewed and, as necessary, revised to provide recognition of Negro history, culture and contributions to our society. Library books which deal with such subjects should be added to school book collections.

9. Vocational education offerings should be reviewed and improved as a means of providing students of both races with education relevant to vocational interests and as a means of reducing dropouts.

[A1491]

10. Headstart or similar preschool programs for children of both races should be implemented.

11. Use of Federal and Station education funds should be planned comprehensively for maximum educational benefit to all eligible children.

## STUDENTS

1. The Superintendent should direct each principal to hold special orientation programs welcoming students who will be new to a school, before the regular school year begins.

2. The Superintendent should require each principal to see that students are frankly and fully informed about the desegregation plan and their responsibilities to help carry it out. Each principal should seek to establish rapport and communication links with new students to encourage mutual understanding and confidence.

3. The Superintendent should direct each principal to establish a student-faculty human relations committee representing both races to aid in the successful implementation of desegregation.

4. All school staff and members of the student body should exert extra effort to assure the full participation of all students of both races in extra-curricular programs, including when appropriate the provision of a "late bus" for those staying after school to participate in such programs.

5. Each principal should request teachers to make themselves available to students outside of regular class for counseling and extra instructional help.

IX.

RESOURCES FOR ASSISTANCE

In addition to the regular resources for assistance available to school officials, districts developing or carrying out plans of desegregation in Mississippi may call upon the following agencies for help:

Center for Intercultural Education
Title IV Center
College of Education
University of South Alabama
307 Gaillard Drive
Mobile, Alabama 36608
Phone: (205) 344-3400 Ext. 286

Division of Equal Educational Opportunities
U. S. Office of Education
50 Seventh Street, N. E., Room 404
Atlanta, Georgia 30323
Phone: (404) 526-3076

[A1493]

Choctaw Co., Ala.

APPENDIX A

FORM I
BUILDING INFORMATION

Name of School _Butler Elementary_

Address _Butler, Ala._

Name of Principal _Joseph H. Crenshaw_

Grades in School _1 through 6_

Number of Permanent Teaching Stations _30_

State Rated Capacity _____

Maximum Building Capacity (with~~out~~ portables) _900_

Portable and Temporary Classrooms _4_

_May 1969_
Current Student Enrollment _765_ White , _75_ Negro

Total Student Enrollment _840_

Number of Teachers _28_ White , _2_ Negro , _30_ Total

Other Professional Personnel _____ White , _____ Negro , _____ Total

ENROLLMENT BY GRADES

| | 1st | | 2nd | | 3rd | | 4th | | 5th | | 6th | | 7th | | 8th | | 9th | | 10th | | 11th | | 12th | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N |
| | 128 | 7 | 134 | 10 | 138 | 13 | 134 | 11 | 135 | 19 | 130 | 14 | | | | | | | | | | | | | 799 | 74 |
| Total | 135 | | 144 | | 151 | | 145 | | 154 | | 144 | | | | | | | | | | | | | | 873 | |

_Net enrollment for Ala - 1968-69_

Number of Students Transported ~~203~~ _637_

Age of Building _Main: 30 yrs. Addition No.1 14 yrs - Addition No.2 4 yrs._
_Lunchroom + Classrooms - ④ - 2 yrs -_
Type of Construction _Brick Veneer -_

Number of Portable Classrooms _4_

Number of Temporary Classrooms _0_

Number of Acres in School Site _20_

Number of Square Feet in Building _____

Attach a list of the subjects or courses offered.

(A1495)

*Choctaw Co., Ala.*

APPENDIX A

FORM I
#### BUILDING INFORMATION

Name of School *County Training School (Lisman High as of July 1)*

Address *Lisman, Ala.*

Name of Principal *Joseph Marsh*

Grades in School *1—12*

Number of Permanent Teaching Stations *43*

State Rated Capacity _____

Maximum Building Capacity (without portables) *1000*

Portable and Temporary Classrooms *0*

Current Student Enrollment *0* (White), *1001* (Negro)

Total Student Enrollment *1001*

Number of Teachers *3* (White), *40* (Negro), *43* (Total)

Other Professional Personnel _____ (White), _____ (Negro), _____ (Total)

*3⁰\10⁰*

#### ENROLLMENT BY GRADES

| | 1st | | 2nd | | 3rd | | 4th | | 5th | | 6th | | 7th | | 8th | | 9th | | 10th | | 11th | | 12th | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N |
| | 0 | 120 | 0 | 73 | 0 | 85 | 0 | 84 | 0 | 101 | 0 | 71 | 0 | 108 | 0 | 71 | 0 | 75 | 0 | 105 | 0 | 63 | 0 | 75 | 0 | 1031 |
| Total | 120 | | 73 | | 85 | | 84 | | 101 | | 71 | | 108 | | 71 | | 75 | | 105 | | 63 | | 75 | | 1031 | |

*Net enrollment for Ala- 1968-69*

[A1496]

Number of Students Transported___ 993 _____

Age of Building _Main - 12 yrs-(High) Main (Elem) 40 yrs - Addn Not- 6 yrs_
Gym + Lunchroom - 2 yrs -
Type of Construction _Old Elem - wood - others - Brick veneer_

Number of Portable Classrooms___ 0 _____

Number of Temporary Classrooms___ 0 _____

Number of Acres in School Site___ 30 _____

Number of Square Feet in Building_____

Attach a list of the subjects or courses offered.

home eco room

Commercial room family

part of home eco suite

18 typewriters

science lab -

6 stations each serving

4 students

[A1497]

*Choctaw Co., Ala*

APPENDIX A

FORM I
BUILDING INFORMATION

Name of School *Choctaw County High School*

Address *Butler, Ala.*

Name of Principal *Harold E. Owen*

Grades in School *7 - 12*

Number of Permanent Teaching Stations *32*

State Rated Capacity_____

Maximum Building Capacity (without portables) *675*

Portable and Temporary Classrooms *0*

Current Student Enrollment *643* *May 1969* , *29*
White Negro

Total Student Enrollment *672*

Number of Teachers *31* , *1* , *32*
White Negro Total

Other Professional Personnel_____ , _____ , _____
White Negro Total

ENROLLMENT BY GRADES

| | 1st | | 2nd | | 3rd | | 4th | | 5th | | 6th | | 7th | | 8th | | 9th | | 10th | | 11th | | 12th | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N |
| | | | | | | | | | | | | | 147 | 4 | 145 5 / 80 4 | | 113 4 / 93 5 | | 119 8 / 55 8 | | 94 | 6 | 78 | 7 | 696 | 29 |
| Total | | | | | | | | | | | | | 151 | | 159 | | 147 | | 123 | | 100 | | 85 | | 735 | |

*Net enrollment for Ala.
1968-69*

*Standard Classrooms - Plus double term teaching room (total 23)*

[A1498]

Number of Students Transported ~~H.S.~~ 537

Age of Building _Main - 33 yrs. Lunchroom + Science 10 yrs - Gym 14 yrs._
_Library - office - 2 yrs -_

Type of Construction _Brick Veneer -_

Number of Portable Classrooms _0_

Number of Temporary Classrooms _0_

Number of Acres in School Site _22_

Number of Square Feet in Building

Attach a list of the subjects or courses offered.

_Science labs_

_7 stations each serving_

_Commercial room -_

_Cafeteria_
_200_

_4 shifts_

[A1499]

*Choctaw Co., Ala*

APPENDIX A

FORM I
BUILDING INFORMATION

Name of School *East Choctaw High*

Address *Butler, Ala.*

Name of Principal *Alphonso Marsh*

Grades in School *1 – 12*

Number of Permanent Teaching Stations *36* *(34)*

State Rated Capacity _____

Maximum Building Capacity (without portables) *950*

Portable and Temporary Classrooms *0*

Current Student Enrollment *0* White , *840* Negro

Total Student Enrollment *840*

Number of Teachers *0* White , *36* Negro , *36* Total

Other Professional Personnel _____ White , _____ Negro , _____ Total

ENROLLMENT BY GRADES

| | 1st | | 2nd | | 3rd | | 4th | | 5th | | 6th | | 7th | | 8th | | 9th | | 10th | | 11th | | 12th | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N |
| | 0 | 110 | 0 | 66 | 0 | 73 | 0 | 82 | 0 | 76 | 0 | 94 | 0 | 88 | 0 | 93 | 0 | 66 | 0 | 54 | 0 | 35 | 0 | 40 | 0 | 867 |
| Total | 110 | | 66 | | 73 | | 82 | | 76 | | 94 | | 88 | | 83 | | 66 | | 54 | | 35 | | 40 | | 867 | |

*32. Net enrollment for Ala-1968-69*
*Standard Classrooms*
*2 sub standard rooms*

Number of Students Transported *837*

Age of Building *4 yrs*

Type of Construction *Brick Veneer*

Number of Portable Classrooms *0*

Number of Temporary Classrooms *0*

Number of Acres in School Site *20*

Number of Square Feet in Building _____

Attach a list of the subjects or courses offered.

[A15011]

APPENDIX A

FORM I
BUILDING INFORMATION

Name of School _Silas Elementary_

Address _Silas, Ala -_

Name of Principal _Roxie Downey_

Grades in School _1 - 6 - 1-class of special Education_

Number of Pernament Teaching Stations _7_

State Rated Capacity_____

Maximum Building Capacity (without portables) _210_

Portable and Temporary Classrooms _0_

Current Student Enrollment _May 1969_ _163_ , _2_
 White Negro

Total Student Enrollment _165_

Number of Teachers _6_ , _1_ , _7_
 White Negro Total

Other Professional Personnel_____ , _____ , _____
 White Negro Total

ENROLLMENT BY GRADES

| | 1st | | 2nd | | 3rd | | 4th | | 5th | | 6th | | 7th | | 8th | | 9th | | 10th | | 11th | | 12th | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N |
| | 29 | 2 | 30 | 0 | 26 | 0 | 25 | 0 | 26 | 0 | 29 | 0 | | | | | | | | | | | | | 165 | 2 |
| Total | 31 | | 30 | | 26 | | 25 | | 26 | | 29 | | | | | | | | | | | | | | 167 +11 |

_Net enrollment for Ala, 1968-69_.

_8 - standard Classrooms + library_

_Sp. Ed. no grade given_

Number of Students Transported _164_

Age of Building _30 yrs -_

Type of Construction _Brick Veneer_

Number of Portable Classrooms _0_

Number of Temporary Classrooms _0_

Number of Acres in School Site _15_

Number of Square Feet in Building_____

Attach a list of the subjects or courses offered.

[A1503]

*Choctaw Co., Ala*

APPENDIX A

FORM I
BUILDING INFORMATION

Name of School _Southern Choctaw High_

Address _Silas, Ala-_

Name of Principal _James R. Thompson_

Grades in School _7—12_

Number of Permanent Teaching Stations _20_

State Rated Capacity_____

Maximum Building Capacity (without portables) _400_

Portable and Temporary Classrooms _0_

_May 1969_
Current Student Enrollment _389_ , _0_
 White Negro

Total Student Enrollment _389_

Number of Teachers _18_ , _2_ , _20_
 White Negro Total

Other Professional Personnel _____ , _____ , _____
 White Negro Total

ENROLLMENT BY GRADES

| | 1st | | 2nd | | 3rd | | 4th | | 5th | | 6th | | 7th | | 8th | | 9th | | 10th | | 11th | | 12th | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N |
| | | | | | | | | | | | | | 37 | 0 | 82 | 0 | 59 | 0 | 68 | 0 | 68 | 0 | 75 | 0 | 389 | 0 |
| Total | | | | | | | | | | | | | 37 | | 82 | | 59 | | 68 | | 68 | | 75 | | 389 | |

*Net enrollment for Ala. 1968-69*

[A1504]

Number of Students Transported _374_

Age of Building _Main - 32 yrs - Addition No I. 10 yrs - Music - 6 yrs_
_Addition No. 2 - office and gym - 8 yrs - Addition No. 3, 15 yrs_
Type of Construction _Brick Veneer =_

_Voc. Wood - 30 yrs-old -_

Number of Portable Classrooms _0_

Number of Temporary Classrooms _0_

Number of Acres in School Site _24_

Number of Square Feet in Building _____

Attach a list of the subjects or courses offered.

home eco room
+ kitchen in
30 year old bldg

football stadium 2,000

gym, seats 400

[A1505]

Choctaw Co., Ala.

APPENDIX A

FORM I

<u>BUILDING INFORMATION</u>

**Name** of School _Gilbertown Elementary_

**Address** _Gilbertown, Ala._

**Name** of Principal _Mary Hamrick_

Grades in School _1 — 7_

Number of Permanent Teaching Stations _12_ _(15)_

State Rated Capacity_____

Maximum Building Capacity (without portables) _450_

Portable and Temporary Classrooms _0_

Current Student Enrollment _308_ , _1_
_May 1969_ White Negro

Total Student Enrollment _309_

Number of Teachers _11_ , _1_ , _12_
 White Negro Total

Other Professional Personnel_____ , _____ , _____
 White Negro Total

<u>ENROLLMENT BY GRADES</u>

| | 1st | | 2nd | | 3rd | | 4th | | 5th | | 6th | | 7th | | 8th | | 9th | | 10th | | 11th | | 12th | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N |
| | 52 | 0 | 45 | 0 | 45 | 0 | 49 | 0 | 37 | 0 | 52 | 0 | 30 | 0 | | | | | | | | | | | 311 | 1 |
| Total | 52 | | 46 | | 45 | | 49 | | 37 | | 52 | | 30 | | | | | | | | | | | | 312 | |

Net enrollment for Ala. 1968-69

15 standard classrooms

Number of Students Transported _298_

Age of Building _Main - 45 yrs. Addition No I - 14 yrs -_

Type of Construction _Main - Wood - Addition No I Brick Veneer_
_Lunchroom 25 yrs - Wood -_

Number of Portable Classrooms _0_

Number of Temporary Classrooms _0_

Number of Acres in School Site _30_

Number of Square Feet in Building_____

Attach a list of the subjects or courses offered.

[A1507]

Choctaw Co., Ala

APPENDIX A

FORM I
BUILDING INFORMATION

Name of School _Shady Grove High_

Address _Silas, Ala. R.F.D-I_

Name of Principal _William Scruggs_

Grades in School _1 - 12_

Number of Permanent Teaching Stations _26_

State Rated Capacity___

Maximum Building Capacity (without portables) _600_ ?

Portable and Temporary Classrooms _3_

May 1969
Current Student Enrollment _0_ , _582_
White Negro

Total Student Enrollment _582_

Number of Teachers _3_ , _23_ , _26_
White Negro Total

Other Professional Personnel___, ___, ___
White Negro Total

ENROLLMENT BY GRADES

| | 1st | | 2nd | | 3rd | | 4th | | 5th | | 6th | | 7th | | 8th | | 9th | | 10th | | 11th | | 12th | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N | W | N |
| | 0 | 58 | 0 | 59 | 0 | 54 | 0 | 54 | 0 | 40 | 0 | 56 | 0 | 48 | 0 | 49 | 0 | 39 | 0 | 50 | 0 | 42 | 0 | 33 | 0 | 582 |
| Total | 58 | | 59 | | 54 | | 54 | | 40 | | 56 | | 48 | | 49 | | 39 | | 50 | | 42 | | 33 | | 582 | |

Net enrollment for Ala. 1968-69

22 Standard's
1 in Library

[A1508]

Number of Students Transported _58-1_

Age of Building _Main 10yrs - Addition No I 8yrs. No 2. 6yr. No.3- 4yrs_
_No. 4-2yrs. No.5- 1yr -_
Type of Construction _Brick Veneer_

Number of Portable Classrooms _3_

Number of Temporary Classrooms _0_

Number of Acres in School Site _2 0_

Number of Square Feet in Building _____

Attach a list of the subjects or courses offered.

*library Title I*

*66 chairs*

*945 Volumes,*

*a(V holdings inadequate*

*( small classroom*
*sub standard.*

[A1509]