UNITED STATES of America, Plaintiff,

v.

MOSS–AMERICAN, INC., Defendant.

No. 75–C–277.

United States District Court,
E. D. Wisconsin.

March 3, 1978.

William J. Mulligan, U. S. Atty. by Charles H. Bohl, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

Quarles & Brady, Frank J. Daily, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The defendant has filed a motion to dismiss and for costs and attorney's fees pursuant to Rules 37(d) and 41(b), Federal Rules of Civil Procedure. The motion is based on allegations of substantial misconduct by government agents during the discovery proceedings held in this case. The motion to dismiss and for costs will be granted, but the request for attorney's fees will be denied.

This is an action for damages and injunctive relief by the United States against Moss-American, Inc., because of the defendant's alleged pollution of the Little Menomonee River in violation of 33 U.S.C. §§ 407 and 1311. The government alleges that effluent wastes from the defendant's Milwaukee plant entered the river either directly or by "leaching," or percolating, through the earthen floors of the plant adjacent to the river. The defendant terminated its operations at the plant after the commencement of this litigation.

In April, 1977, personnel from the Environmental Protection Agency's National Enforcement Investigations Center (NEIC) in Denver conducted field tests and took samples from the Little Menomonee River. Because the defendant opposed testing on its property, the government moved for an order compelling the defendant to permit the taking of core and surface samples.

In a decision and order dated July 20, 1977, I resolved this discovery dispute by appointing a special master, pursuant to the court's general equity powers, to supervise the proposed inspection and taking of samples. In September and October, 1977, NEIC personnel conducted tests on the defendant's property under the special master's supervision.

Between December 13 and 16, 1977, the defendant conducted oral depositions of several of the NEIC personnel. One of the individuals deposed, James Steinfeld, had participated in both the April, 1977, testing of the river and the master-supervised tests which took place in September and October, 1977.

Mr. Steinfeld was questioned under oath for a complete afternoon on December 14, 1977. The following morning, before the deposition reconvened, Mr. Morrin, an Environmental Protection Agency attorney, acting as Mr. Steinfeld's counsel, advised the defendant's counsel that he should question Mr. Steinfeld about misconduct in connection with the collection of samples during the field tests. Mr. Morrin explained that Mr. Steinfeld wished to disclose some matters that were worrying him.

Upon such questioning, Mr. Steinfeld admitted that after the April, 1977, field tests, he had placed a sample taken from one area of the Little Menomonee River with samples taken from another area of the river in order to complete a sampling which otherwise would have been incomplete. The substituted sample was labeled with a falsified tag, and, in order to cover up the substitution, the location from which the substituted sample was taken was not entered in the field records. The government concedes that "the sample involved was a material sample needed in order to draw a meaningful conclusion concerning one of the objectives of the field study . . . ."

It was also revealed at the Denver depositions that the original tags on the sample bottles from the field tests were destroyed and replaced because they had become soiled. The defendant asserts that proper laboratory procedure requires that the original soiled tags be saved to permit a subsequent comparison. Because the original tags were destroyed, the defendant argues that an inference is raised that alterations had been made.

This misconduct was brought to the court's attention in communications from the assistant United States attorney in this case and from the defendant's counsel upon their return from Denver.

Although Mr. Steinfeld's transcribed deposition has not yet been filed with the

court, there is no apparent dispute as to the above description of the deposition testimony. In his communication to the court, the assistant United States attorney also informed the court and the defendant's counsel that certain documents and photographic slides which should have been disclosed to the defendant in response to a prior request for production of documents had been found in Mr. Steinfeld's work area. The government also represented in such letter that it would rely on no evidence from the NEIC.

The defendant has accused the government agents of other misconduct during the course of the discovery in this case, but the government disputes these accusations. I am unable to make any findings on the present record as to these additional allegations. I therefore treat the defendant's motion as based on the admitted misconduct which has been described above.

On this factual background, I turn to the issue whether the extreme sanction of dismissal of the government's case with prejudice is warranted because of the conduct of one of the plaintiff's agents; conduct which both parties describe as "shocking and possibly criminal."

The defendant relies on Rules 37(d) and 41(b) as authority for dismissal of this action. Rule 41(b) reads, in part:

> "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him."

The government contends that Rule 41(b) is inapplicable because its agent's misconduct has not violated any specific federal rule or any order of this court.

The government also argues that Rule 37(d) was not designed to cover this situation since it provides sanctions only for a party's failure to *comply* with a properly propounded discovery request. In this case, the party against which the sanction is sought was the party that *initiated* the discovery proceeding in question.

I agree that neither Rule 37(d) nor Rule 41(b) specifically applies to the instant situation, but I believe that it is within the inherent equitable powers of this court to dismiss an action when a just determination of the action has been seriously thwarted by a plaintiff's willful misconduct. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), affirming 291 F.2d 542 (7th Cir. 1961); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 951 (9th Cir. 1976); *Rohauer v. Eastin-Phelan Corporation*, 499 F.2d 120 (8th Cir. 1974).

Although Rule 37(d) is technically inapplicable to the instant motion, there is no doubt that misconduct during the discovery process is at the core of the motion. Accordingly, Rule 37(d) is not irrelevant to the question before me.

The parties have cited numerous cases in which district courts have dismissed or declined to dismiss cases because of various defaults by plaintiffs. None of these cases bear sufficient similarity to this case to be of significant assistance. Generally speaking, the Supreme Court has been reluctant to sustain district court dismissals under Rule 37(d) in the absence of willful noncompliance or bad faith. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). The court of appeals for this circuit has limited the dismissal of actions for even serious neglects. *Vac-Air, Inc. v. John Mohr & Sons*, 471 F.2d 231 (7th Cir. 1973).

In my opinion, the misconduct of the government's agent constituted blatant bad faith and evinced a willful disregard of the government's duty in carrying out the discovery process. Unlike *Vac-Air*, the offensive conduct here is intentional, not neglectful. It is conduct that offends our basic notions concerning the fair judicial resolution of disputes.

Understandably, the government attempts to disassociate itself from Mr. Steinfeld's acts by stressing that "the party

guilty of misconduct was an employee of a governmental agency, which agency was involved in an investigative capacity." I cannot accept this effort to minimize the central role played by the Environmental Protection Agency, the NEIC and its employees in this litigation. The purpose of the Environmental Protection Agency is ". . . to permit coordinated and effective governmental action to assure the protection of the environment by abating and controlling pollution on a systematic basis." 40 C.F.R. § 1.3

The NEIC provides technical support for agency investigations and related enforcement matters. In a very real sense, the Environmental Protection Agency and the NEIC are the most closely interested units of the federal government to the subject matter of this case. Moreover, it is undisputed that the falsified sample was evidence material to the factual issues in this case. Thus, misconduct by an employee of Mr. Steinfeld's status cannot be treated as having only marginal importance.

More basically, however, the government cannot disavow responsibility for the conduct of one of its agencies nor the conduct of an agency employee because the government must be treated as one entity. As the Court stated in *S & E Contractors, Inc. v. United States,* 406 U.S. 1, 10, 92 S.Ct. 1411, 1417, 31 L.Ed.2d 658 (1972):

"A citizen has the right to expect fair dealing from his government . . . and this entails in the present context treating the government as a unit rather than as an amalgam of separate entities."

The government also argues that the dismissal of this case would unfairly penalize members of the public who were harmed by the defendant's alleged pollution of the Little Menomonee River. Assuming that such pollution could be proved, the dismissal of this case would be unfortunate. However, the public is obliged to accept the adverse consequences which may accrue in any civil or criminal case in which its interests are improperly represented by the federal government. The government's argument that a dismissal without a hearing on

the merits of its cause may violate due process is without merit since the underlying circumstances are of its own creation. *Rohauer v. Eastin-Phelan Corporation,* supra, 499 F.2d at 122.

I also find insufficient the government's representation that it will not rely on any evidence gathered by the NEIC and that it will offer no testimony of NEIC employees. The defendant persuasively argues that this self-imposed sanction is really no penalty at all since the NEIC data and witnesses have already been thoroughly discredited by the testimony adduced at the December depositions.

After giving careful thought to the parties' arguments, I am convinced that no sanction less than dismissal of the plaintiff's case will have sufficient punitive or deterrent impact. To permit this case to go forward based on the government's representation of future good faith might encourage litigants, or their agents, to use improper trial tactics until discovered. The government is held to a high standard of conduct in civil litigation, its dominant purpose being to assist the court in arriving at a just and true resolution. *United States v. Choctaw County Board of Education,* 310 F.Supp. 804, 810 (S.D.Ala.1969). In this case, a government agent sought to build a case with falsified evidence and attempted to cover up such falsification. He also withheld material from both the government's attorney and the defendant's attorney which should have been disclosed during discovery. The government's willful failure to meet its high standard of conduct in this case justifies, in my judgment, the dismissal of its case.

The defendant has also requested that it be awarded costs including attorney's fees. Section 2412 of Title 28 authorizes an award of costs to the prevailing party in an action by or against the government, except as otherwise specifically provided by statute. However, that section specifically precludes an award of attorney's fees and expenses against the government. The defendant has cited no statute

or other persuasive authority which would permit an award of attorney's fees in this case. Accordingly, costs will be allowed to the defendant, but its request for attorney's fees will be denied.

Therefore, IT IS ORDERED that the defendant's motion for dismissal of this action be and hereby is granted.

IT IS ALSO ORDERED that the defendant's motion for an award of its costs in this action be and hereby is granted, but its request for attorney's fees and expenses be and hereby is denied.

IT IS FURTHER ORDERED that this action be dismissed, with prejudice.