TELEVIDEO SYSTEMS, INC.; K. Philip Hwang; C. Gemma Hwang, Plaintiffs-Appellees,

v.

Fred P. HEIDENTHAL, individually and dba South Harbor Investors and West Cliff Securities, Defendant-Appellant.

No. 86–2129.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1987.

Decided Sept. 2, 1987.

John S. Siamas, Debra S. Belaga and Joseph S. Faber, San Francisco, Cal., for plaintiff TeleVideo Systems, Inc.

Allen Ruby, San Jose, Cal., for plaintiffs-appellees.

David Van Hoesen, San Francisco, Cal., for defendant-appellant.

Before FLETCHER, BEEZER and THOMPSON, Circuit Judges.

PER CURIAM:

Appellant, Fred Heidenthal, appeals a default judgment entered against him as a sanction for his perjury during depositions and the false pleadings he filed with the court. The district court struck his answer and allowed the appellees to proceed with proof of their case unopposed. The court entered a judgment in excess of $11,000,-000 for securities fraud and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et. seq. (RICO). We affirm.

## FACTS

TeleVideo Systems, Inc. and its principal shareholders brought suit against Heiden-

thal, a vice-president of the company, for securities fraud and RICO violations after discovering evidence of his substantial fraudulent activities. Heidenthal allegedly participated in the diversion of company funds to several fictitious businesses that he had "created."

In depositions, Heidenthal did not deny orchestrating the diversion of corporate funds. Rather, he claimed that he acted at the behest of Mr. Hwang, the President of TeleVideo, to divert money from TeleVideo for Mr. Hwang's personal use. Heidenthal testified extensively and in great detail about a pseudo-gambling scheme (playing both sides of a bet) that he used as a vehicle to accomplish the diversion, and about other secret transfers of cash to Hwang. Much of the energies of appellees in preparing their case for trial necessarily was diverted to disproving these allegations.

On the day of trial, Heidenthal appeared in court and filed a written declaration that he had testified falsely in his depositions. Specifically, he admitted that he had not participated in a pseudo-gambling scheme but rather had lost $700,000 of appellees' money in gambling. He also stated that he did not transfer large sums of cash to Hwang. Appellees filed a motion for sanctions and for default judgment on their claims against Heidenthal. The court granted appellees' motion for sanctions. It struck Heidenthal's answer and then proceeded to hear appellees' proof in support of their claims against Heidenthal. At the conclusion of the hearing, the court awarded appellees $3,427,392.60 in actual damages together with $766,630.31 in attorneys fees. It directed that the damage award be trebled and that all stock in TeleVideo acquired by Heidenthal be restored to TeleVideo and that the stock purchase agreement between TeleVideo and Heidenthal be rescinded.

## DISCUSSION

### I.

■ Appellant claims that the district court abused its discretion in striking his answer and entering a default judgment against him. We disagree. Courts have inherent equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980); *Link v. Wabash R.R.*, 370 U.S. 626, 632, 82 S.Ct. 1386, 632, 8 L.Ed.2d 734 (1962); *United States v. Moss-American, Inc.*, 78 F.R.D. 214, 216 (E.D.Wis.1978). Although the inherent powers have been criticized as "nebulous" *see Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 561 (3d Cir.1985), they are necessary to enable the judiciary to function. *See Michaelson v. United States*, 266 U.S. 42, 65, 45 S.Ct. 18, 19, 69 L.Ed. 162 (1924) (recognizing the inherent power of the courts to punish for contempts as essential to the administration of justice).

■ There are limits, however, on the power of courts to impose sanctions. The need for the orderly administration of justice does not permit violations of due process. *See Phoceene Sous Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 805–06 (9th Cir.1982) (recognizing that willful deceit and conduct utterly inconsistent with the orderly administration of justice would merit the imposition of severe sanctions, but finding that because defendant's deceit—falsely stating that he was too ill to attend trial—was unrelated to the merits of the controversy the sanction was inconsistent with due process); *Securities and Exchange Commission v. Seaboard Corp.*, 666 F.2d 414, 416–17 (9th Cir.1982) (finding that a default judgment against the defendant for failure to pay a fine when the defendant had complied with an order to give a deposition was punitive and a violation of due process as the court could not presume that the case lacked merit); *see also Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 349–54, 29 S.Ct. 370, 379–81, 53 L.Ed. 530 (1909) (upholding a default judgment for the defendant's failure to comply with an order to produce documents

because the court could presume, from the failure to produce evidence relating directly to the merits of the matter, that the case was lacking in merit); *Hovey v. Elliott,* 167 U.S. 409, 413–14, 17 S.Ct. 841, 843, 42 L.Ed. 215 (1897) (finding that courts may not strike an answer and enter a default merely to punish a contempt of court unrelated to merits of case).

Appellant's elaborate scheme involving perjury clearly qualifies as a willful deceit of the court. Although the perjury occurred before the trial began, it infected all of the pretrial procedures and interfered egregiously with the court's administration of justice. The court sanctioned Heidenthal not only to punish him, but to enable the court to proceed to hear and decide the case untainted by further interference and possible further perjury on the part of Heidenthal.

Appellant argues that a default judgment of this magnitude was far too severe a penalty. He argues that he mitigated the harm by admitting before trial commenced that he had perjured himself; he urges that his confession warrants some favorable consideration and argues that this court should be lenient towards him in order not to deter future perjurers from making such admissions. In other words, appellant believes that his belated candor should be rewarded. In some circumstances we might agree that lesser sanctions would be appropriate where a defendant has admitted his falsehoods and they have not tainted the entire pretrial process. This is not such a case.

Appellant's recantation was not motivated by a desire to repent and set the record straight. Under questioning by the district judge, appellant revealed that even his admission was part of his elaborate scheme to prevail at trial. In answer to the district judge's question as to why he testified falsely in the depositions, appellant responded: "[b]ecause I was making sure that I would have him and Phil [Hwang] to

the point where they thought they had me by the short ones, and they would get me in here and then, when I get in here, I am going straight and tell the truth on everything, and his case is going to crumble apart."

Heidenthal's statement, perhaps the only candid one he makes, reveals that his perjury and the recanting were both orchestrated to reap a tactical advantage. To permit Heidenthal to proceed to trial would have played into Heidenthal's hands and greatly disadvantaged the plaintiffs who had planned their strategy and developed their case to respond to Heidenthal's false evidence.

■ Under the circumstances, the trial court accorded Heidenthal all the process that was his due. The court, proceeding under Rule 55(b)(2) of the Federal Rules of Civil Procedure, determined that a hearing should be held and that the plaintiffs should present in open court their *prima facie* case showing entitlement to judgment. At the hearing, the court heard substantial testimony and admitted documentary evidence on all of the plaintiffs' claims. Plaintiffs, as part of their presentation, furnished the court with an extensive memorandum that, *inter alia,* cited the court to the specific exhibits among the voluminous submissions that would support each of their claims. At the conclusion of the hearing the court stated that it was satisfied with proof on all claims with one caveat that it wished to give further consideration to the "RICO case," although it expressed the view that "there is little problem with it." (TR 140). Subsequently, it entered judgment for the plaintiffs on all claims.

Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment.[1] "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount

---

**1.** Rule 55(b)(2) in pertinent part reads: If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by

evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper....

of damages, will be taken as true." (citations omitted). *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). The district court exceeded the requirements of the rule by taking extensive evidence on *all* allegations in the complaint including damages.

## II.

In addition to claiming that it was error to enter a default judgment against him, Heidenthal claims, that, in any event, it was error to award damages against him on the RICO claims. Before the district court, he claimed that the court lacked jurisdiction over the RICO claims because of the deficiency in the pleadings in respect to the existence of a pattern of racketeering activity. On appeal, his contention is that there was no substantial evidence that he engaged in a pattern of racketeering activity. Ordinarily, in the context of a default, we would permit the appellant to challenge only the sufficiency of the allegations in the complaint to support the claims of RICO violations, *Danning v. Lavine*, 572 F.2d 1386 (9th Cir.1978), and, of course, the evidence in respect to damages. *Geddes*, 559 F.2d at 560. However, since the court required the plaintiffs to prove a *prima facie* case, we have reviewed both the averments in the complaint and the evidence adduced at the hearing.

 In *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), the Supreme Court cautioned that, while a "pattern of racketeering activity" must include *at least* two distinct acts of racketeering,

> [t]he legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added).

Both TeleVideo's complaint and the evidence presented at the default hearing reveal that Heidenthal engaged in at least thirteen acts of fraud, clearly related, with similar purposes, results, participants, victims, and methods of commission. Because these acts were many, continuous and related, we have no difficulty concluding that a pattern of racketeering activity was pled and a *prima facie* case established.

AFFIRMED.