**Fred D JACKSON, Plaintiff,**

v.

**Stephen STURKIE, dba First Lite Records and Doc McKenzie, dba Doc McKenzie & the Gospel Hi–Lites, Defendant.**

**No. C 97–0506 VRW.**

United States District Court,
N.D. California.

March 28, 2003.

Roy S. Gordet, San Francisco, CA, for Fred D. Jackson, Plaintiff.

Mark E. Kalmansohn, Edwin F. McPherson, McPherson & Kalmansohn, Los Angeles, CA, for Stephen Sturkie, First Lite Records, Defendants.

Mark K. Slater, Bernard C. Shek, Sheppard Mullin Ritchter & Hampton, San Francisco, CA, for Doc McKenzie, Defendant.

Lee T. Miscavage, William E. Green, Law Offices of William Green & Associates, Palo Alto, CA, for Kest, Inc., Cross-claimant.

## ORDER

WALKER, District Judge.

In 1977, plaintiff composed a song, entitled "Cross in the Middle," the copyright to which he registered in 1989. In 1996, plaintiff became aware that defendant Doc McKenzie had recorded and was performing a song called "Man in the Middle," which plaintiff believed infringed his copyright to "Cross in the Middle." *Id.*

Based on this alleged infringement, plaintiff commenced this action against the record label that produced "Man in the Middle" and its manager for copyright infringement, pursuant to 17 USC § 101 *et seq*, false designation of origin, pursuant to 15 USC § 1125(a), and unfair and deceptive business practices under California's Unfair Competition Law (UCL), pursuant to Cal Bus & Prof § 17200 *et seq.* See Compl (Doc # 1).

An amended complaint (FAC) was filed on September 12, 1997, naming Doc McKenzie and Benny Hill as additional defendants. See Doc # 39. Plaintiff subsequently agreed to a settlement resolving his claims against Stephen Sturkie, individually and dba First Lite Records; and a consent decree was entered on May 11, 1998. See Doc # 51. On December 3, 1999, defendant Hill was voluntarily dismissed. See Doc # 73.

The prosecution of plaintiff's claims against Doc McKenzie (defendant), by contrast, has followed a tortuous path. Defendant received service of the summons and complaint on January 29, 1998. Proof of service was filed with the court on February 9, 1998. See Doc # 45. Plaintiff requested an entry of default on February 26, 1998; and default was entered on March 5, 1998. See Docs # 46. Plaintiff moved for default judgment and in response to that motion defendant entered an initial appearance.

On December 9, 1999, the court vacated the February 26, 1998, entry of default, granted defendant's motion for leave to answer the FAC and denied plaintiff's pending motion for default judgment. See 12/09/99 Order (Doc # 72). On October 12, 2000, the court granted defense counsel's motion to withdraw, based on defendant's failure to pay attorney fees and

expenses. See Doc # 81. Defendant thereafter failed to appear at a case management conference scheduled for October 17, 2000. A short time later, plaintiff renewed his motion for default judgment. See Doc # 84. Because a second default had not been entered, that motion was denied in an order dated December 5, 2000. See Doc # 86.

On January 26, 2001, plaintiff requested entry of default against defendant and default was entered on February 26, 2001. See Docs ## 87, 91. Plaintiff renewed his motion for default judgment against defendant a third time and the court, on July 11, 2001, issued an order to show cause why default judgment should not be entered. See Docs ## 92, 94. On September 14, 2001, after receiving defendant's return to the order to show cause, plaintiff's motion for default judgment was vacated. See Doc # 97.

At this point, the sputtering course of this litigation appeared to take a turn for the better. The parties reached a settlement agreement and the court entered a consent decree on March 29, 2002. See Doc # 99. A crucial term of the consent decree was that defendant's failure to make either of two required payments to plaintiff, which together would have totaled $8,400, opened the door for plaintiff to renew his motion for default judgment and seek whatever damages and other relief lawfully available. See Consent Decree (Doc # 99, Exh A), ¶ 2.

Defendant in fact failed to make either of the required payments. And plaintiff now moves for default judgment and an award of statutory damages. See Doc # 105. Plaintiff also seeks injunctive relief against defendant barring future infringements of plaintiff's copyright to "Man in the Middle," pursuant to 17 USC § 502, and an award of attorney fees and costs, pursuant to 17 USC § 505. Lastly, plaintiff seeks to recover an additional $4,200

from defendant's former counsel, Joseph L Smalls, Jr, who allegedly represented to plaintiff that he had placed the first of defendant's $4,200 payments in his client trust account and would promptly pay plaintiff that sum once the consent decree was entered. According to plaintiff, upon entry of the consent decree, Smalls failed to pay out the $4,200 in his possession and can be held accountable to plaintiff by the court for this failure.

Plaintiff does not request, in the motion for default judgment, any relief for his false designation claims under 15 USC § 1125(a) or for his UCL claims under California Business & Professions Code § 17200. In the FAC, plaintiff seeks an injunction restraining defendant from any further violations of 15 USC § 1125(a), damages, attorney fees and costs and any profits obtained by defendant as a result of "defendants' acts of unfair competition." See FAC (Doc # 39), ¶¶ 24–25. The court presumes that plaintiff's reference to "unfair competition" in his discussion of the false designation claims is erroneous and that plaintiff intended by these paragraphs to seek relief for any conduct of defendant amounting to false designation. Plaintiff seeks the same forms of relief—an injunction, damages, attorney fees and defendant's profits—for defendant's alleged UCL violations. See FAC (Doc # 39), ¶¶ 28–29.

Defendant has filed neither an opposition nor a statement of non-opposition as required by Civil Local Rule 7–3. Nor did defendant appear, either in person or through counsel, at the hearing on plaintiff's motion, held September 27, 2002.

For the reasons detailed below, plaintiff's motion for default judgment (Doc # 105) is GRANTED. Plaintiff shall be awarded statutory damages for defendant's infringement of plaintiff's copyright to the song, "Man in the Middle," as out-

lined below. Because plaintiff can point to no authority to support any claim for damages against Smalls, plaintiff's request for an award of $4,200 against defendant's former counsel is DENIED.

## I

 "Courts have inherent equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices." *TeleVideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917 (9th Cir.1987) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Link v. Wabash RR,* 370 U.S. 626, 632, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *United States v. Moss–American, Inc.,* 78 F.R.D. 214, 216 (E.D.Wis. 1978)).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Systems,* 826 F.2d at 917–18 (quoting *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir.1977)). "Upon entry of default judgment, facts alleged to establish liability are binding upon the defaulting party, and those matters may not be relitigated on appeal." *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir.1978) (citations omitted). Following default judgment, a defendant is deemed to have admitted the well-pleaded allegations in the complaint. *Benny v. Pipes,* 799 F.2d 489, 495 (9th Cir.1986), amended, 807 F.2d 1514 (9th Cir.1987) (citing *Thomson v. Wooster,* 114 U.S. 104, 114, 5 S.Ct. 788, 29 L.Ed. 105 (1885); *In re Visioneering Construction,* 661 F.2d 119, 124 (9th Cir. 1981)).

The consent decree the parties entered and the court approved provided that defendant would make two payments of $4,200 each to plaintiff, the first within seven business days of defendant's receipt of a fully executed original copy of the settlement agreement and the second on or before March 1, 2002. See Consent Decree (Doc # 99), Exh A, ¶ 3. It further provides that "[i]f the second check is not received before the due date, [defendant] shall be in default." *Id.* Defendant has failed to make either of the required payments. See Gordet Decl (Doc # 102), Exh C.

Defendant's failures to abide by the terms of the settlement decree and to attend the hearing scheduled for plaintiff's motion for default judgment are the last in a series of failures by defendant actively— or even passively—to engage in the defense of his case. As outlined above, he has repeatedly missed scheduled court appearances. Upon retaining counsel, he failed to pay costs and fees to which he had agreed, thereby precipitating his counsel's withdrawal. Having been afforded repeated opportunities to defend himself in this matter, defendant has abdicated his responsibility to do so for the final time. At this stage of the proceedings, default judgment is the only appropriate remedy for defendant's misconduct, and so plaintiff's motion for default judgment (Doc # 105) is GRANTED.

## II

### A

Because default judgment is appropriate, the court takes the well-pleaded allegations in the FAC as true. In the FAC, plaintiff alleges that defendant "knowingly and willfully produced, manufactured, distributed, and caused to be broadcast, without authorization of [p]laintiff, audio cassette copies of ['Cross in the Middle']," a song to which plaintiff then held and now holds the copyright. FAC (Doc # 39), ¶ 13. Plaintiff further alleges that he informed defendants Sturkie and First Lite

Records of the infringement, which nonetheless continued. See *id.*, ¶ 14.

■ To establish a prima facie case of willful infringement plaintiff must demonstrate that defendant was aware, or should have been aware, that his activities were infringing. *Hearst Corp. v. Stark*, 639 F.Supp. 970, 979–80 (N.D.Cal.1986); see *Spencer Promotions, Inc. v. 5th Quarter Enterprises Inc.*, 1996 WL 438789 at *6 (N.D.Cal.1996). The factual allegations just cited, taken as true, suffice to demonstrate defendant's willful infringement. The court concludes accordingly that defendant willfully infringed plaintiff's copyright to the song "Cross in the Middle" and so plaintiff is entitled to appropriate damages and or penalties as provided by the Copyright Act.

■ The infringer of a copyright is liable for the copyright owner's actual damages plus any additional profits of the infringer or statutory damages. 17 USC § 504(a). A copyright owner may elect, at any time before final judgment, to recover an award based on statutory damages for any infringement. 17 USC § 504(c). Plaintiff may elect statutory damages for copyright infringement regardless of the adequacy of evidence offered of his actual damages and the amount of defendant's profits. *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir.2001) ("*Columbia II*"). Furthermore, "[b]ecause awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by plaintiff of the profits reaped by defendant." *Los Angeles News Service v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 996 (9th Cir.1998). The availability of statutory damages ensures there will always be an avenue open to sanction an infringer and vindicate the statutory policy of discouraging infringement. See *id.* Statutory damages are particularly appropriate in a case, such as this one, in which defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiff's actual damages.

The statutory minimum damage award is $500; the maximum is $20,000, subject to certain exceptions not applicable here. 17 USC § 504(c)(1) (1994). Under the version of the Copyright Act that governs the conduct at issue, the court in its discretion may increase the award of statutory damages to a sum not to exceed $100,000 if the infringement is found to have been committed willfully. See 17 USC § 504(c)(2) (1994). In 1999, the statutory damages provision of the Copyright Act was amended to increase the minimum award to $750 and the maximum to $30,000 in most cases. 17 USC § 504(c)(1) (2000). The maximum award for willful infringement was increased to $150,000. 17 USC § 504(c)(2) (2000). The increased limits apply to actions brought after December 9, 1999, and so do not apply to this action, commenced in 1997.

Willful copyright infringement, for purposes of the award of statutory damages, requires the defendant's knowledge that his conduct constitutes copyright infringement. *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 293 (9th Cir.1997) (vacated on other grounds) ("*Columbia I*"); see *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 (9th Cir.1990). As the court has concluded, the FAC succeeds in stating a claim of willful infringement against defendant.

If statutory damages are elected, "[t]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus*

*Records Corp.,* 734 F.2d 1329, 1335 (9th Cir.1984) (citing *LA Westermann Co. v. Dispatch Printing Co.,* 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499 (1919); *Columbia II,* 259 F.3d at 1195; *Peer Int'l Corp.,* 909 F.2d at 1336). "'Within these limits the court's discretion and sense of justice are controlling.'" *Peer Int'l Corp.,* 909 F.2d at 1336 (quoting *F.W. Woolworth Co. v. Contemporary Arts,* 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952)); *Columbia I,* 106 F.3d at 284. In determining the appropriate amount of statutory damages, the court should be guided by "'what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement, and the like.'" *Columbia II,* 259 F.3d at 1195 (quoting *Woolworth,* 344 U.S. at 232, 73 S.Ct. 222); see *Peer Int'l Corp.,* 909 F.2d at 1336.

Plaintiff requests an award of $125,000, based on the willfulness of defendant's infringement and the bad faith defendant has demonstrating in failing to comply with the terms of the consent decree. Because the infringement has been determined to be willful, a wide range of statutory damages is available, but an award of $125,000 exceeds the applicable limit. See 17 USC § 504(c)(2) (1994); *Sega Enterprises Ltd., v. MAPHIA,* 948 F.Supp. 923, 940 (N.D.Cal.1996) (awarding statutory damages of $5,000 per work for infringement of video games); *BMG Music v. Perez,* 952 F.2d 318, 320 (9th Cir.1991) (affirming award of $15,000 per work for infringement of sound recordings as within the district court's discretion); *Peer Int'l Corp.,* 909 F.2d at 1337 (affirming award of $50,000 per work, the maximum statutory award, as within the court's discretion given defendant's knowledge of the industry).

In *Columbia I,* a particularly illustrative case, the district court's award of $20,000 per work for multiple infringements of plaintiff's copyright for a television show was upheld by the Ninth Circuit. See *Columbia I,* 106 F.3d at 296 (vacated and remanded by *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998)). The Supreme Court, however, remanded the case to the district court so that the amount could be determined by a jury. See *id.* The jury's award, $72,000 per work, was over three times the original award, but still upheld on appeal, because it was within the statutory limits. See *Columbia II,* 259 F.3d at 1195.

The court first considers the available evidence of plaintiff's actual damages and/or any profits earned by defendant as a result of the infringement of plaintiff's copyright. There is little evidence to show plaintiff's actual damages. Although he has expressed an intent to record "Cross in the Middle", plaintiff has never actually done so. Evidence of defendant's profits is also limited, because of defendant's failure to participate in discovery or otherwise engage in his defense. The only available evidence comes from the declaration of Steven Sturkie, the owner of the record company that produced defendant's infringing recordings. Sturkie paid defendant a total of $16,737 in royalties in 1995–96, relating to recordings that included the song, "Man in the Middle," the infringing version of "Cross in the Middle" performed and recorded by defendant. Defendant also performed "Man in the Middle" at paid concerts on various occasions and sold an unknown number of videocassettes featuring "Man in the Middle." What gains he may have reaped from these sales and performances are uncertain.

Defendant's profits, therefore, total at least $16,737, and were likely greater. The fact that a clearer determination of actual damages cannot be readily made is largely a result of defendant's failure actively to engage in this litigation. Defen-

dant's lack of cooperation has forced plaintiff to file and the court to rule on three separate motions for default judgment. Defendant has signed a consent decree and then failed to comply with its terms. This conduct is indicative of bad faith on defendant's part.

Additionally, a willful infringer is exposed to a damage award higher not limited to the value of the copyright holder's losses and/or the infringer's benefits. Statutory damages for willful infringement have a punitive component of which the court must be mindful. See *Los Angeles News Service*, 149 F.3d at 996.

In light of the foregoing, the court concludes that an award of $33,474—twice the amount of royalties paid to defendant by the record company for sales of recordings containing the infringing song—is appropriate to secure the threefold goals of the Copyright Act's statutory damages provision: compensating plaintiff for his losses and/or defendant's gains from infringement, penalizing defendant for his misconduct and deterring future willful infringements of copyright. Because plaintiff has not yet sought to profit from the copyright to his song himself, there does not seem to be any basis for a higher award. But defendant's misconduct must, at the same time, be laid at defendant's door and an award in excess of the amount of damages for which plaintiff has presented evidence reflects the punitive component of a statutory damage award.

Plaintiff is further entitled to interest on that amount dating from the entry of judgment as provided by 28 USC § 1961.

### B

■ In a copyright infringement action, a court may grant an injunction to "prevent or restrain infringement of a copyright." 17 USC § 502(a). "Generally, a showing of copyright infringement liability and the threat of future violations is suffi-

cient to warrant a permanent injunction." *Sega*, 948 F.Supp. at 940; see *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir.1993). Here, the court finds that defendant's past behavior and on-going ability to infringe plaintiff's copyright constitute a continued threat of future infringing activity. Defendant amply possesses the means for future infringement, either during a live concert or through the production of infringing video cassettes. In addition, defendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.

### C

■ In a copyright infringement action, the court may allow the prevailing party to recover full costs and reasonable attorney fees. See 17 USC § 505. An award of attorney fees to a prevailing plaintiff "serve[s] the purpose of encouraging private enforcement and deterring infringements." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir.1989). But unlike fee-shifting statutes contained in civil rights legislation, the fee award authorized for successful parties in copyright actions is not aimed to promote the litigation of meritorious claims that otherwise would not be prosecuted. See *Fogerty*, 510 U.S. at 524, 114 S.Ct. 1023. "The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public. In the copyright context, it has been noted that entities which sue for copyright infringement as plaintiffs can run the gamut from corporate behemoths to starving artists; the same is true of prospective copyright infringement defendants." *Id.* (internal citations, quotation marks and bracketing omitted). As a re-

sult, "[p]revailing plaintiffs and prevailing defendants are to be treated alike, [and] attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion" and in an evenhanded fashion. *Id.* at 534, 114 S.Ct. 1023.

In determining whether to award attorney fees, the district court should consider the degree of success obtained by the moving party, the frivolousness of any claims, the motivation for the claims, the objective reasonableness of the factual and legal arguments advanced in support of them and the need for compensation and deterrence. See *Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 558 (9th Cir.1996) (citing *Fogerty,* 510 U.S. at 535 n. 19, 114 S.Ct. 1023); *Maljack Productions, Inc. v. GoodTimes Home Video,* 81 F.3d 881, 889 (9th Cir.1996). Exceptional circumstances are not a prerequisite to an award of attorney fees and costs; district courts may freely award fees, so long as they treat prevailing plaintiffs and prevailing defendants alike and seek to promote the Copyright Act's objectives. See *Historical Research v. Cabral,* 80 F.3d 377, 378 (9th Cir.1996); *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211 (9th Cir.1997).

In *Fogerty,* the Supreme Court instructed that, for purposes of determining the amount of attorney fees to be awarded under the Copyright Act, the equitable discretion of the court should be guided by the considerations identified in *Hensley v. Eckerhart,* 461 U.S. 424, 436–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). See *Fogerty,* 510 U.S. at 534, 114 S.Ct. 1023. In *Hensley,* the Court approved the lodestar method for calculating fees in civil rights litigation: multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. See *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; see also *Intel Corp. v. Terabyte Intern., Inc.,* 6 F.3d 614, 622 (9th Cir.1993). The

Ninth Circuit has further clarified the inquiry the court is to conduct: "[t]he prevailing market rate is indicative of a reasonable hourly rate. The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County,* 815 F.2d 1258, 1262–63 (9th Cir.1987) (citing *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

Once calculated, the lodestar rate may be adjusted "to account for other factors not subsumed within it." *Ferland v. Conrad Credit Corp.,* 244 F.3d 1145, 1149 n. 4 (9th Cir.2001). Those other factors include the preclusion of other employment, the customary fee, time limits imposed on the attorney by the client or other circumstances, the undesirability of the case, the nature and length of the professional relationship between client and attorney and the awards allowed in similar cases. See *Morales v. City of San Rafael,* 96 F.3d 359, 363 n. 9 (9th Cir.1996).

Here, plaintiff's success is complete and unquestioned: a default judgment against defendant and an award of statutory damages. Plaintiff's claims clearly cannot be characterized as frivolous, but were brought rather to vindicate the goals of the Copyright Act: the promotion of original musical works for the benefit of the public. Although defendant's apparent unwillingness to defend himself has limited plaintiff's opportunities to present arguments on his own behalf, those arguments have been reasonable given the nature of the infringing conduct alleged. Moreover, an award of attorney fees and costs in this action serves the goal of deterring similar misconduct, particularly defendant's apparent

practice of evading obligations under copyright law by simply failing to defend himself. Clearly, a plaintiff who displayed a similar lack of interest in prosecuting his case would be subject to dismissal and other sanctions, pursuant to FRCP 41(b). The evenhanded treatment of prevailing parties, whether plaintiff or defendant, required by *Fogerty*, demands that plaintiff be compensated and defendant appropriately penalized for defendant's abdication of his duties to the court. Accordingly, the court finds an award of attorney fees appropriate.

■ The court must now determine the amount of the fee award. Plaintiff's counsel has submitted contemporaneous invoices showing the hours he and his legal assistant worked on the case. See Gordet Invoice (Doc # 108, Exh 4). Plaintiff has requested $9,342.20 in attorney fees and $430.45 in costs. This represents 57.47 hours of plaintiff's attorney's compensable time at an hourly rate of $150—$8620.50—and 10.31 hours of his legal assistant's time at an hourly rate of $70—$721.70. The court has reviewed the time allocated to various tasks and finds the allocation to have been reasonable. The court also finds the costs submitted to be reasonable. The hourly rate, $150 per hour, charged by plaintiff's counsel is below that normally charged by counsel in the intellectual property field, and in particular below that charged by experienced attorneys. Plaintiff's request is limited to legal services provided between December 1996 and July 1999. Accordingly, the court finds plaintiff's request to be reasonable and awards Plaintiff $9,342.20 in attorney fees and $430.45 in costs.

Although plaintiff has not provided the court with any additional information regarding the reasonableness of the $150 hourly rate indicated on the invoices he has filed with the court, publicly available data reveal that rate to be close to an approximate average hourly billing rate charged for legal services generally in the San Francisco area. Recent census data, drawn from the *Statistical Abstract of the United States: 2001*, indicates that gross receipts for law partnerships nationwide total $66 billion. See U.S. Census Bureau, *Statistical Abstract of the United States: 2001*, (121st ed) (Stat Abs), Table 712. Net receipts for those partnerships total $26 billion. *Id.* The ratio of net to gross receipts is 39.39%.

Using census data for the San Francisco, California primary metropolitan statistical area, the Bureau of Labor Statistics (BLS) has calculated employment and wage estimates for a wide range of employment categories, including lawyers. See United States Department of Labor, Bureau of Labor Statistics, "San Francisco, CA PMSA—2001 OES Metropolitan Area Occupational Employment and Wage Estimates," available at http://www.bls.gov/2001/oes_7360.htm. For lawyers employed in the San Francisco metropolitan area, the BLS estimates the median hourly wage at $57.33 and the mean hourly wage at $54.01. See *id.*, "Legal Occupations." Employing the median figure, $57.33, and dividing that amount by 39.39%—the ratio of net to gross income for law partnerships derived from the national census data—yields a figure of $145.54 as a rough average billing rate for the entire spectrum of San Francisco area lawyers, including attorneys working in private firms of all sizes, solo practitioners, attorneys employed by nonprofit organizations and government attorneys. This average appears fairly accurately to reflect the going rate in the San Francisco legal community for legal services across a broad range of practice areas. Such a figure can serve as a useful baseline for determining a reasonable hourly rate to employ in the court's lodestar calculation.

Since plaintiff's request does not materially deviate from this baseline, the court concludes that the $150 billing rate proposed is a reasonable one for plaintiff's counsel's services. The court's conclusion is bolstered by the fact that plaintiff's counsel indicates that he has reduced the rate requested from his normal hourly rate of $180, the amount he would bill on a non-contingent basis for similar services. See Gordet Decl (Doc # 108, Exh 9), ¶ 9. Plaintiff's counsel indicates that, because his client is a senior citizen of modest means, he has handled plaintiff's case on a contingency basis heretofore, and so has actually spent a greater number of hours on the case than reflected in plaintiff's attorney fee request. See *id.*, ¶ 10. Similarly, the $70 per hour billing rate requested for the time spend by a paralegal employed by plaintiff's counsel also appears reasonable. See *id.*, ¶ 9.

In light of this reduction of the total hours requested as reasonable, the number of hours expended reflect a reasonable amount of time to spend on a case which, while not legally complex, has required plaintiff's counsel's diligence in seeking to obtain a judgment against an elusive defendant. In addition, plaintiff's attorney does not seek additional compensation for any hours spent prosecuting this case after July 1999.

All told, both the hourly billing rate proposed for plaintiff's counsel and his paralegal and number of hours requested are reasonable. Plaintiff has not sought, nor does the court see any ground for, an upward adjustment of the lodestar amount based on the additional factors identified above. The court therefore awards plaintiff $9,342.20 in attorney fees and $430.45 in costs.

### III

Although plaintiff does not address these claims in his motion for default judgment, the FAC contains a cause of action for false designation under the Lanham Act and cause of action for unfair trade practice under the UCL. See FAC (Doc # 39), ¶¶ 22–29. Because default judgment has been entered, the court must assess the sufficiency of these claims as they have been pleaded.

As an initial matter, the court notes the Ninth Circuit's "consistently held" view that California UCL claims are "substantially congruent to claims made under the Lanham Act." See *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir.1994) (citing *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir.1991), in turn citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988); internal quotation marks omitted). The court's analysis of plaintiff's false designation claims is therefore determinative regarding plaintiff's UCL claims as well.

Plaintiff alleges, in effect, that defendant engaged in a form of reverse passing off: "represent[ing] that someone other than Plaintiff is the author of ["Cross in the Middle."]" FAC (Doc # 39), ¶ 23. "Reverse passing off' or 'reverse palming off' occurs when a product is mislabeled to mask the creator's contribution." *Cleary*, 30 F.3d at 1261. Products so mislabeled can include music recordings.

Section 1125(a) of Title 15 of the United States Code makes a person who uses a false description of the origin of any goods or services put into commerce civilly liable for that conduct. See *id.* Such false description includes reverse passing off. Reverse passing off constitutes a violation of the Lanham Act, however, only in situations involving "bodily appropriation" of the work of another. *Shaw v. Lindheim*, 919 F.2d 1353, 1364 (9th Cir.1990). Such situations are limited to two types: (1) express reverse passing off, in which the

wrongdoer removes the name or trademark on another party's product and sells that product under another name; and (2) implied reverse passing off, in which the wrongdoer removes the name of the manufacturer or source of the product and sells that product unbranded. See *Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir.1981); *Shaw*, 919 F.2d at 1364. The allegations in the FAC are an attempt to state a claim of express reverse passing off.

The court must first determine therefore whether the work allegedly falsely designated is substantially similar to the original. See *Cavalier v. Random House*, 297 F.3d 815, 828 (9th Cir.2002) (citing *Litchfield v. Spielberg*, 736 F.2d 1352, 1358 (9th Cir.1984)). If the court determines there is a substantial similarity, it must then "further consider whether the defendant has copied 'substantially the entire item' to support a 'reverse passing off' claim." *Id.* (citing *Cleary*, 30 F.3d at 1261).

The FAC alleges that defendants "knowingly and willfully produced, manufactured, distributed and caused to be broadcast, without the authorization of Plaintiff, audio cassette copies of ['Cross in the Middle']." FAC (Doc # 39), ¶ 13. Plaintiff further alleges that "[d]efendants have represented to the consuming public that someone other than [p]laintiff is the author of ['Cross in the Middle']" and that this misrepresentation "is likely to cause confusion, to cause mistake and to deceive as to the affiliation, connection or association of these [d]efendants with [p]laintiff." *Id.* ¶ 23.

■ These somewhat skeletal claims, taken as true, nonetheless state a claim for relief under the Lanham Act, 15 USC § 1125(a). What plaintiff has failed to demonstrate—either in the FAC or subsequent filings—are any damages plaintiff has suffered or any other relief to which plaintiff is entitled as a result of defen-

dant's reverse passing off not duplicative of the damages awarded for defendant's copyright infringement. Plaintiff has failed to plead or otherwise demonstrate an entitlement to additional relief beyond that the court has ordered for defendant's violations of the Copyright Act.

As indicated above, the same reasoning is directly applicable to plaintiff's state UCL claims. See *Cleary*, 30 F.3d at 1263. Therefore, while the court finds that plaintiff has stated claims adequate to demonstrate that defendant violated the Lanham Act and the UCL by passing off plaintiff's song as defendant's own, the court cannot find any support for an award of additional damages or other relief to plaintiff under these two causes of action. Nor, as the court has already indicated, has plaintiff requested any such additional relief in his motion for default judgment.

■ Plaintiff's causes of action under the Lanham Act and the UCL also seek an award of attorney fees for the prosecution of those claims. The record reflects that, in prosecuting this case, plaintiff has focused exclusively on the prosecution of the copyright infringement claims. As discussed above, plaintiff is entitled to an award of full costs and reasonable attorney fees for the successful prosecution of those claims. There is no evidence in the record, however, to indicate that plaintiff spent additional time pursuing the Lanham Act or UCL claims. Nor does plaintiff request, in the motion for default judgment, an additional award of attorney fees, provide any authority for such an award or offer any evidence to support such an award.

Under 15 USC § 1117(a), the court may award attorney fees to a prevailing party "in exceptional cases." See *id.* There has been no demonstration that plaintiff's false designation claims are exceptional. Under California Code of Civil Procedure

§ 1021.5, the court may award attorney fees to a successful litigant in a UCL action that, among other things, confers "a significant benefit" on the general public or a large class of persons. See *id.* There has been no such showing regarding this case. The court finds that no further award of attorney fees is warranted.

## IV

 Finally, plaintiff seeks an award of $4,200 against Joseph L Smalls, Jr, defendant's former counsel. In a letter dated December 5, 2001, Mr Smalls' represented to plaintiff's counsel that $4,200 was in his trust account ready for payment pursuant to the Mutual Release and Settlement Agreement. Smalls did not convey those funds upon entry of the consent decree. This representation, was made prior to the finalization of the mutual release and consent decree signed by the parties in February 2002 and adopted by the court on March 29, 2002. Upon entry of the consent decree, Smalls did not release any funds to plaintiff.

At oral argument, plaintiff could cite no authority to support the argument that the court had authority—whether derived from a federal rule, statute or its own inherent powers—to require opposing Smalls to pay $4,200 to plaintiff for Small's failure to keep the promise just described. It is defendant's failure to pay that has led to the entry of default judgment. The award of statutory damages will compensate plaintiff for the losses he has suffered. He is not entitled to an additional award, whether in the form of damages or a sanction, from Smalls. Plaintiff's request for an order requiring Smalls to pay him $4,200 is therefore DENIED.

## V

In conclusion, plaintiff's motion for default judgment (Doc # 105) is GRANTED. The court orders defendant to pay plaintiff statutory damages in the amount of $33,474. As a successful party, plaintiff is also entitled to an award of full costs and reasonable attorney fees. The court therefore orders that defendant pay plaintiff $9,342.20 in attorney fees and $430.45 in costs. Additionally, defendant is permanently enjoined from any activities that would constitute further infringement of plaintiff's copyright to the song "Cross in the Middle." Plaintiff has not demonstrated that he is entitled to additional relief for defendant's violations of the Lanham Act or the UCL. Lastly, plaintiff's request for an additional award of $4,200 to be paid by defendant's former counsel, Smalls, is DENIED.

The clerk is directed to enter judgment for plaintiff as provided above.

IT IS SO ORDERED.

## JUDGMENT.

In pursuant to the Order granting plaintiff's motion for default judgment, the Court orders defendant to pay plaintiff statutory damages in the amount $33,474. As a successful party, plaintiff is also entitled to an award of full costs and reasonable attorney fees. The Court therefore Orders that defendant pay plaintiff $9,342.20 in attorney fees and $430.45 in costs.

IT IS ORDERED AND ADJUDGED that judgment is entered for plaintiff.