**WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; WV Films III LLC, a Delaware limited liability company, Plaintiffs,**

v.

**Carmine CARIDI, an individual; Russell Sprague, an individual; and Does 1 through 10, Defendants.**

No. CV 04–582SVW.

United States District Court, C.D. California.

Nov. 18, 2004.

Andrew M. White, David E. Fink, White O'Connor Curry & Avanzado, Los Angeles, CA, for Plaintiffs.

## ORDER RE: MOTION FOR DEFAULT JUDGMENT

WILSON, District Judge.

### I. INTRODUCTION

On January 28, 2004, Warner Bros. Entertainment Inc. and WV Films III LLC (collectively "Warner Bros.") filed this action for copyright infringement against Carmine Caridi ("Caridi") and Russell Sprague ("Sprague"), seeking a permanent injunction, enhanced statutory damages, and reasonable attorney's fees and costs.

Warner Bros. is the owner of all rights, title, and interest in and to the copyrights in the screenplay and motion picture *The Last Samurai* and *Mystic River*. Warner Bros. submitted both *The Last Samurai* and *Mystic River* to the Academy of Motion Picture Arts and Sciences (the "Academy") for consideration in connection with the 76th Annual Academy Awards. As is common practice within the industry, Warner Bros. distributed copies of both films to members of the Academy for award consideration. Within the industry, copies like these are known as "Academy screeners" or "screeners."

Because of the growing concern about film piracy, Warner Bros. instituted a series of new anti-piracy measures for Academy screeners. Among other safeguards, any member of Academy who wished to

receive screeners was required to acknowledge, "prior to receipt," that he had only a limited license to use the screeners, which remained the property of Warner Bros.

Caridi was a member of the Academy and was entitled to receive copies of the screeners. Caridi was provided notice of the limited license and, on or about October 26, 2003, executed a written acknowledgment with respect to the screeners (the "Acknowledgment") which stated:

As a member in good standing of the Academy of Motion Picture Arts and Sciences, I want to receive copies of 'screeners' of motion pictures in contention for the 2003 Academy awards.

I understand that my receipt of such screeners does not convey to me any of the underlying intellectual property rights to the films involved, and that each physical cassette or DVD will remain the property of the company which supplied it.

I agree to ensure that I know, at all times, the whereabouts of all screeners sent to me under this agreement. I agree not to allow the screeners to circulate outside my residence or office. I agree not to allow them to be reproduced in any fashion, and not to sell them or to give them away at any time.

Upon notification by the Academy that Caridi had executed the Acknowledgment, Warner Bros. made arrangements to have the screeners of the two films delivered to Caridi. Caridi received and personally signed for his personal Academy screener of *The Last Samurai* on or about December 18, 2003. He received his screener of *Mystic River* on or about December 10, 2003.

Each and every screener, including the copies sent to Caridi, contained clear notice of the limited nature of the license granted to screener recipients. The notice aired for twenty seconds at the commencement of each motion picture. The notice stated:

THIS DVD/VIDEO CASSETTE IS THE PROPERTY OF WARNER BROS. It is being lent for the purposes of personal review by the recipient and may not be used for any other purpose or transferred to any third party. Warner Bros. reserves the right to cancel the loan and recall possession of the DVD/video cassette at any time. Any duplication, transmission, or public exhibition of the material contained in this DVD/video cassette is a violation of federal law.

In addition, the screeners contained a "special disclaimer," which aired after the main titles for sixty seconds and thereafter every thirty minutes for another sixty seconds. The additional "special disclaimer" stated, "This copy property of Warner Bros. loaned for Award consideration only."

Shortly after Caridi received the screeners, he made them available to Sprague for unauthorized copying and distribution on the Internet and via other delivery mediums. Sprague provided Caridi with shipping materials, address labels and Federal Express account numbers for Caridi's use in shipping the screeners from his home to Sprague at a location in Homewood, Illinois. Using the materials provided by Sprague, Caridi shipped the screeners to Sprague who duplicated, exhibited, and distributed the films. In addition to making duplicate copies of the films in their original VHS format, Sprague converted the screeners to a digital format, which could be transmitted, uploaded and downloaded via the Internet and copied on DVD.

Shortly after converting the screeners to digital format, Caridi and Sprague transmitted the digital files embodying Caridi's

screeners of *The Last Samurai* and *Mystic River* to a third party or third parties for unauthorized use, distribution, and exhibition on the Internet. Digital files embodying Caridi's screeners were posted on the Internet for the purpose of making them available for unauthorized use, review, download, reproduction, and distribution by third parties. Caridi and Sprague produced and distributed numerous additional copies of the films in DVD and VHS formats, and distributed them to third parties. Sprague later shipped some of the copies and one or both of Caridi's original screeners back to Caridi at his residence in California.

On March 5, 2004, Warner Bros. effected personal service of the Complaint on Caridi. Caridi never responded.

On or about March 23, 2004, Sprague entered into a plea agreement with the United States Attorney's Office for the Central District of California. Sprague agreed to plead guilty to violations of 17 U.S.C. § 506(a)(2) and 18 U.S.C. § 2319(c)(1). (Fink Decl. ¶ 3, Ex. A.)

As a result of Caridi's failure to respond to the Complaint, Warner Bros. filed its Request for Entry of Default against Caridi on April 13, 2004.

On April 16, 2004, the Court entered default of Caridi.

## II. DISCUSSION

### A. *Default Judgment*

[1] Rule 55(b) (2) of the Federal Rules of Civil Procedure provides for the entry of judgment by default by the court. Fed. R.Evid. 55(b)(2). However, a court may not enter judgment by default against an infant or incompetent person unless she is represented by a general guardian, com-

mittee, conservator, or other such representative. *Id.* Moreover, the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix, § 501, provides specific requirements which must be fulfilled before a default judgment may be entered. 50 U.S.C. § 520.

Caridi is not an infant or incompetent person. (Fink Decl. ¶ 4.) Nor is Caridi in the military or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act. (Fink Decl. ¶ 4.) Thus, there is nothing in Rule 55(b)(2) or the Soldiers' and Sailors' Civil Relief Act that prevents the Court from entering judgment by default. The only question is whether the Court should.

The grant or denial of a motion for the entry of a default judgment is within the discretion of the court. *Lau Ah Yew v. Dulles,* 236 F.2d 415, 416 (9th Cir.1956). However, default judgments are ordinarily disfavored. *Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir.1986). Thus, although the factual allegations in the non-defaulting party's complaint are taken as true upon entry of default, *Valley Oak Credit Union v. Villegas (In re Villegas),* 132 B.R. 742, 746 n. 5 (9th Cir.BAP 1991)[1], "[e]ntry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *Id.* at 746. The Ninth Circuit has indicated that a court should consider the following factors in exercising its discretion as to the entry of a default judgment:

(1) the possibility of prejudice to the plaintiff,

(2) the merits of the plaintiff's substantive claim,

(3) the sufficiency of the complaint,

(4) the sum of money at stake in the action,

---

1. Note, however, that factual allegations relating to the amount of damages are *not* taken as

true. *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917 (9th Cir.1987).

(5) the possibility of a dispute concerning material facts,

(6) whether the default was due to excusable neglect, and

(7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

Here these factors weigh in favor of granting the motion for entry of default judgment.

### 1. Possibility of Prejudice to the Plaintiff

Failure to grant the motion would clearly prejudice Warner Bros. Warner Bros. filed this action in January and default was entered in April. Thus, Caridi's failure to respond has already delayed the case for ten months, during which time Caridi may have continued to infringe upon Warner Bros.'s copyrights.

### 2. The Merits of the Plaintiff's Substantive Claim

There is clearly merit to Warner Bros.'s claim since one of the named defendants (Sprague) has already pled guilty to criminal charges arising out of the conduct complained of here.

### 3. The Sufficiency of the Complaint

Warner Bros.'s Complaint is clearly sufficient. "In order '[t]o establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). Here, Warner Bros. alleged both ownership of a valid copyright and copying of constituent ele-

ments by Caridi. Thus, the Complaint is sufficient.

### 4. The Amount of Money at Stake

The amount of actual monetary damage Warner Bros. sustained as a result of Caridi's conduct is unclear. However, with every day that passes, that amount may be growing larger since Caridi may be continuing to infringe upon Warner Bros.'s copyrights. Moreover, since Warner Bros. alleged (and, by virtue of the entry of default, proved) willful infringement by Caridi, Warner Bros. is entitled to received enhanced statutory damages in an amount not to exceed $150,000 per film. Thus, the amount of money at stake is significant. This factor favors Warner Bros.

### 5. The Possibility of a Dispute Concerning the Material Facts

This factor weighs in favor of granting default judgment since, as a result of the entry of default, there is no possibility of a dispute concerning the material facts.

### 6. Whether Default was Due to Excusable Neglect

A defendant's conduct in failing to respond may either be culpable or due to excusable neglect. "A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer." *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir.1987). However, "if a defendant's conduct was not 'culpable,' then her failure to respond to a lawsuit is ordinarily 'excusable' ...." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696–97 (9th Cir. 2001). Excusable neglect is "a general equitable [principle], not necessarily reserved for extraordinary circumstances." *Id.* at 696. It "takes account of factors such as 'prejudice, the length of the delay

and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.' " *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)).

Here, Caridi received notice of the Complaint in early March. Default was entered in April. It is now November. Thus, eight months have elapsed since Caridi received notice, and seven months have elapsed since default was entered. Yet still there is no sign of Caridi. Under the circumstances, Caridi's conduct cannot be attributed to excusable neglect. Thus, this factor weighs in favor of granting default judgment.

### 7. The Policy Favoring Decisions on the Merits

Obviously, the policy favoring decisions on the merits would weigh against granting the motion for default judgment. However, this factor, standing alone, cannot suffice to prevent entry of default judgment for otherwise default judgment could never be entered. Moreover, given Caridi's unwillingness to make any sort of appearance whatsoever, it is difficult to imagine how the case could be resolved on the merits. Thus, this factor does not weigh very heavily.

Because the factors, on balance, weigh in favor of granting default judgment, the Court grants default judgment. The only question remaining is what remedies, if any, are appropriate.

### B. *Remedies*

Warner Bros. seeks 1) a permanent injunction, 2) enhanced statutory damages in the amount of $150,000 per infringement for each of the two films, and 3) reasonable attorneys' fees and costs.

### 1. Permanent Injunction

■ The Copyright Act of 1976 authorizes a court to grant temporary and final injunctions to "prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Computer,* 991 F.2d 511, 520 (9th Cir.1993).

As a result of the entry of default, liability has been established. Moreover, due to Caridi's non-appearance, there is a threat of continuing violations. Thus, a permanent injunction is warranted.

### 2. Enhanced Statutory Damages

■ The Copyright Act of 1976 provides for an award of enhanced statutory damages upon a finding of willful infringement. Specifically, it provides that "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). "A plaintiff may elect statutory damages 'regardless of the adequacy of the evidence offered as to his actual damages or the amount of the defendant's profits.' " *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.,* 259 F.3d 1186, 1195 (9th Cir.2001) (quoting Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[A] ). Moreover, "[t]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.,* 734 F.2d 1329, 1335 (9th Cir.1984). "In measuring the damages, the court is to be guided by 'what is just in the particular case, consid-

ering the nature of the copyright, the circumstances of the infringement and the like, . . . .' " *Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *F.W. Woolworth Co. v. Contemporary Arts,* 344 U.S. 228, 232, 73 S.Ct. 222, 97 L.Ed. 276 (1952)).

Because of the entry of default, the allegations in Warner Bros.'s Complaint must be taken as true. Thus, since Warner Bros. alleged willful infringement, the Court must take Warner Bros.'s allegation of willful infringement as true. Thus, Warner Bros. is entitled to an award of statutory damages. Indeed, "[s]tatutory damages are particularly appropriate in a case, such as this one in which [the] defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiff's actual damages." *Jackson v. Sturkie,* 255 F.Supp.2d 1096, 1101 (N.D.Cal.2003). The only question is how much the Court should award.

Warner Bros. seeks the statutory maximum of $150,000 per work. The conduct at issue in this case is particularly egregious. As a member of the Academy, Caridi was provided complimentary screeners by Warner Bros. Caridi signed an Acknowledgment in which he agreed not to allow the screeners to be copied. In addition, the screeners carried a notice which warned viewers that "[a]ny duplication, transmission, or public exhibition of the material contained in this DVD/video cassette is a violation of federal law." Finally, a special disclaimer periodically appeared on screen that reminded viewers that the screener was the property of Warner Bros. Nevertheless, Caridi ignored these warnings and breached his promise not to allow the screeners to be reproduced. Given such egregious conduct—which Caridi compounded by failing to proffer any defense or participate in dis-

covery or engage in settlement negotiations—an award of the statutory maximum ($150,000 per work) is warranted here.

### 3. Reasonable Attorneys' Fees and Cost

■ Under the Copyright Act of 1976, a court may award costs and a reasonable attorney's fee to the prevailing party. 17 U.S.C. § 505. The Ninth Circuit has identified five non-exclusive factors that a court may consider in deciding whether to award attorneys' fees pursuant to § 505: " 'the degree of success obtained; frivolousness; motivation; objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence.' " *Magnuson v. Video Yesteryear,* 85 F.3d 1424, 1432 (9th Cir.1996) (quoting *Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir.1994); *see also Smith v. Jackson,* 84 F.3d 1213, 1221 (9th Cir.1996) (noting that a court may consider, but is not limited to, five factors in making an attorney's fee determination: (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective unreasonableness, and (5) the need to advance considerations of compensation and deterrence). However, willful infringement does not, in itself, compel an award of attorney's fees.) *Historical Research v. Cabral,* 80 F.3d 377, 379 (9th Cir.1996).

The issue here is whether attorneys' fees should be awarded and, if so, how much should be awarded.

#### a. *Should Attorney's Fees Be Awarded?*

The five factors weigh in favor of awarding a reasonable attorneys' fee. Warner Bros. was successful on the merits, its claim was hardly frivolous, Caridi's conduct was patently unreasonable, and an award of attorney's fees would further the goal of deterrence. Thus, an award of attorney's fees is justified here.

b. *How Much Should be Awarded?*

Local Rule 55–4 provides that, where the amount of judgment is over $100,000, an award of attorneys' fees should be made in the amount of $5,600 plus two percent of the amount over $100,000. Local Rule 55–4. Thus, since the amount of judgment is $300,000, Rule 55–4 would dictate an award of attorney's fees in the amount of $9,600. Warner Bros. has stipulated to an awards of attorney's fees in that amount.

## III. CONCLUSION

The Motion for Default Judgment Against Defendant Carmine Caridi [23] is hereby GRANTED. In addition, the Court awards the following relief: 1) a permanent injunction enjoining Caridi, and any of his agents, servants, attorneys, any companies owned or controlled by him, and any of his affiliates, successors, and assigns, and all those in active concert or participation with any of them, from continuing to exhibit, market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, or develop any works derived from the films *The Last Samurai* and *Mystic River*, 2) enhanced statutory damages in the amount of $150,000 for each of the two films, and 3) $9,600 in attorney's fees.

IT SO ORDERED.